SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Sergeant First Class Frank Chiofalo v. State** **(A-30-18) (081607)**

**Argued April 23, 2019 -- Decided July 16, 2019**

**PER CURIAM**

Plaintiff Frank Chiofalo, a then-member of the New Jersey State Police (NJSP), filed a complaint under the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, against his employer and certain supervisors (collectively, defendants). The sole issue in this whistleblower appeal is whether the trial court erred in not dismissing this matter in its entirety on summary judgment prior to trial.

As the Assistant Administrative Officer of Troop B of the NJSP, Chiofalo was required to log documents that came in and out of headquarters and to collect reports from the Troop B commander. Chiofalo alleges he was subjected to adverse employment actions as retaliation for his engagement in protected activity related to two incidents.

The first pertained to a claimed refusal to destroy internal NJSP documents. On March 20, 2012, a sergeant and a trooper participated in an unsanctioned escort on the Garden State Parkway, for which they later became subjects of internal review. A "letter of appreciation" from one of the escorted civilians extended thanks for the officers' help (the Civilian Letter). On April 18, 2012, Major Edward Cetnar, Deputy Branch Commander of Field Operations, sent an internal memorandum (the Cetnar Memo) noting that the Civilian Letter had been included in the trooper's personnel file and adding, "[p]lease convey to [the trooper] my appreciation for a job well done." On April 23, 2012, the officers were suspended without pay pending investigation into the escort.

On Friday, April 27, 2012, the Civilian Letter and the Cetnar Memo were received by Chiofalo, who presented them the following Monday to Major Robert Cuomo, the commander of Troop B, and asked what to do with the documents. Cuomo stated he would reach out to Cetnar and provide further instructions. The next week, having received no instructions, Chiofalo went to Cuomo to discuss what he should do with the documents. In his deposition, Chiofalo stated "[Cuomo] said 'It does not exist,'" to which Chiofalo replied, ["I]t does exist I have it in my hand. . . . I'm not going to get rid of it.["] According to Chiofalo, that exchange made it "pretty clear" to him that Cuomo was asking Chiofalo "to get rid of" the documents, and that in stating he was "not going to get rid" of the documents, he was refusing to participate in a criminal or fraudulent act.

1

Chiofalo claimed that the second protected activity occurred during an interaction with Cuomo in which he accused Cuomo of not reporting his vacation time. According to Chiofalo, Cuomo "questioned why [Chiofalo] was taking two weeks off in July." In response, Chiofalo stated that "[he] earned [his] vacation time and when [he] take[s] it, they dock it out of [his] bank" and that "[he] take[s] [his] time, unlike others." According to Chiofalo, when he stated "unlike others" he was referring to Cuomo and to his suspicion that Cuomo was not properly reporting all of the time that he took off.

Defendants filed a motion for summary judgment, alleging that Chiofalo failed to set forth a prima facie case under CEPA. The court denied the motion. The matter proceeded to trial, and a jury awarded Chiofalo compensatory and punitive damages.

Defendants appealed the denial of summary judgment and of the post-trial motions they filed. In addition to failure to state a claim, defendants also argued that Chiofalo failed to identify a specific law or policy that prohibited Cuomo's conduct.

The Appellate Division reversed the trial court judgment, stating, with respect to the validity of a CEPA claim under N.J.S.A. 34:19-3(c), that a plaintiff must first find and enunciate the specific terms of a statute or regulation, or the clear expression of public policy, which would be violated if the facts as alleged are true. The appellate court concluded that Chiofalo failed to do so and that defendants were entitled to summary judgment on that basis. Specific to the timekeeping claim, the Appellate Division added that Chiofalo's statement to Cuomo "was hardly 'whistleblowing' as contemplated by CEPA."

The Court granted Chiofalo's petition for certification. 236 N.J. 220 (2018). Although Chiofalo initially alleged CEPA violations under N.J.S.A. 34:19-3(a) and (c), he conceded at oral argument that his case now rests on N.J.S.A. 34:19-3(c)(2) alone.

**HELD:** The Court does not agree that the trial court erred in refusing to grant defendants summary judgment on plaintiff's CEPA claim related to the alleged refusal to destroy documents, but affirms as to the fraudulent timekeeping allegations.

1. CEPA was enacted to cement New Jersey's commitment to protect and encourage employees to report illegal or unethical workplace activities and should be construed liberally to effectuate its important social goal. N.J.S.A. 34:19-3 sets forth the statute's essential prohibition of employer retaliation for an employee's protected activities, which are identified in three subsections. Subsection (c)(2) protects employees who "[o]bject[] to, or refuse[] to participate in any activity, policy or practice which the employee reasonably believes . . . is fraudulent or criminal." Subsections (c)(1) and (c)(3), respectively, protect employees who take similar action with regard to activities, policies, or practices they reasonably believe are "in violation of a law, or a rule or regulation promulgated pursuant to law" or are "incompatible with a clear mandate of public policy." (pp. 15-17)

2

2.  In a seminal case, the Court addressed a plaintiff's CEPA claims brought under N.J.S.A. 34:19-3(c)(1) and (3).  Dzwonar v. McDevitt, 177 N.J. 451, 461-69 (2003). There, the Court summarized generally what a plaintiff must set forth to establish a prima facie case pursuant to N.J.S.A. 34:19-3(c).  The Court stated that either "the court or the plaintiff" must identify the statute, regulation, rule, or public policy that closely relates to the complained-of conduct.  Id. at 464 (emphasis added).  The identification requirement assists trial courts in weeding out those cases that only concern the most trivial or benign employee complaints.  Importantly, Dzwonar notes that a plaintiff need not "allege facts that, if true, actually would violate that statute, rule, or public policy."  Id. at 463.  A plaintiff is required only to "set forth facts that would support an objectively reasonable belief that a violation has occurred."  Id. at 464.  (pp. 17-20)

3.  While Dzwonar would seem to impose some identification expectation for CEPA claims brought under either N.J.S.A. 34:19-3(c)(1), (2), or (3), the Court is unaware of any New Jersey court that has explicitly imposed this requirement under subsection (c)(2).  Only Battaglia v. United Parcel Service, Inc., 214 N.J. 518 (2013), has analyzed N.J.S.A. 34:19-3(c)(2) post-Dzwonar, and it does not mention any express or implied obligation to identify some legal source rendering activity fraudulent.  That said, the better practice in CEPA actions brought under (c)(2) surely is to identify the statutory or other basis for claiming objected-to behavior is criminal or fraudulent.  "Criminal" or "fraudulent" activity is often apparent and commonly recognizable, which distinguishes (c)(2) claims from those brought under (c)(1) and (3).  But the parties and the court need to have a common understanding of the legal principle that the plaintiff reasonably believed was being violated to enable joinder.  And if a defendant questions the source of law relied on by the plaintiff, that source should be provided by the plaintiff.  (pp. 20-23)

4.  At no point during the trial or post-trial motions did defendants here argue that the CEPA claim was deficient for plaintiff's failure to identify a specific law, rule, regulation or public policy.  It is unfair to reassess the summary judgment record based on arguments that were not advanced and that relate to a point the parties appeared to take for granted -- namely, that refusal to participate in the destruction of documents would support a CEPA claim if plaintiff reasonably believed that the destruction was ordered or occurred.  The Court therefore reverses the Appellate Division to the extent that it vacated the jury award based on the claim as to the destruction of internal documents. The Court agrees, however, that Chiofalo's alleged statement to Cuomo that "[he] take[s] [his] time, unlike others" was simply too amorphous to constitute "'whistleblowing' as contemplated by CEPA."  The Court therefore does not disturb the Appellate Division's judgment with respect to plaintiff's claim related to timekeeping.  (pp. 23-25)

**AFFIRMED IN PART and REVERSED IN PART.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in this opinion.**

3

# SUPREME COURT OF NEW JERSEY

## A-30 September Term 2018

## 081607

Sergeant First Class Frank Chiofalo, a member
of the New Jersey State Police (Badge No. 4772),

Plaintiff-Appellant,

v.

State of New Jersey, Division of State
Police of the State of New Jersey, and
Department of Law and Public Safety,[1]

Defendants-Respondents,

and

Robert Cuomo and Joseph R. Fuentes,

Defendants.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| April 23, 2019 | July 16, 2019 |

George T. Daggett argued the cause on behalf of
appellant (Law Offices of George T. Daggett, attorneys;
George T. Daggett, on the brief).

---

[1] The caption has been revised to reflect the appropriate agency title.

1

Stephanie J. Cohen, Assistant Attorney General, argued the cause on behalf of respondents (Gurbir S. Gewal, Attorney General, attorney; Melissa Dutton-Schaffer, Assistant Attorney General, of counsel, and Adam Robert Gibbons, Deputy Attorney General, on the briefs).

Alan H. Schorr argued the cause for amicus curiae National Employment Lawyers Association of New Jersey (Schorr & Associates, attorneys; Alan H. Schorr, of counsel and on the brief).

PER CURIAM

Plaintiff, a then-member of the New Jersey State Police, filed a complaint under the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, against his employer and certain supervisors. The sole issue in this whistleblower appeal is whether the trial court erred in not dismissing this matter in its entirety on summary judgment prior to trial. The Appellate Division concluded it was error and vacated the jury verdict in plaintiff's favor. Other issues raised by defendants on appeal were not reached by the appellate court.

We granted plaintiff's petition for certification and now reverse in part. We do not agree that the trial court erred in refusing to grant defendants summary judgment on one of plaintiff's two bases for whistleblowing charges. Accordingly, we remand to the Appellate Division for consideration of defendants' unaddressed appellate issues.

I.

A.

Because this appeal centers on the correctness of the denial of summary judgment, we review the facts -- as presented at the close of discovery when defendants filed their motion -- in the light most favorable to plaintiff. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

Plaintiff Frank Chiofalo was an officer in the New Jersey State Police (NJSP). At all relevant times, he was the Assistant Administrative Officer of Troop B of the NJSP, holding the rank of Sergeant First Class with the designation of Sergeant Major. His assignment stationed him at the Troop B Headquarters in Totowa.

As the Assistant Administrative Officer, Chiofalo's duties required him to receive and track documents and other forms of communication to and from Troop B. He was responsible for the collection and tracking of reports and other paperwork, managing inter-office and external mail, maintenance of personnel folders, and managing incoming phone calls. Pertinent to this appeal, his position required him to log documents that came in and out of headquarters and to collect reports from the Troop B commander in which the commander would specify where he intended to be the following day.

3

Chiofalo's initial complaint -- filed at the beginning of January 2013 against the NJSP, the Department of Law and Public Safety, and individual members of the NJSP (collectively, defendants) -- alleged that he was subjected to adverse employment actions at or around the end of July 2012. The actions complained of included being transferred to a less desirable assignment (allegedly a demotion) and being blocked from a promotion to Lieutenant. Shortly after filing the initial complaint, Chiofalo filed for retirement from the NJSP, requesting an effective date of June 1, 2013.[2]

Chiofalo claimed that the NJSP's adverse employment actions violated CEPA because they were retaliation for Chiofalo's engagement in protected activity. The alleged protected activity related to two incidents.

1.

The first protected action identified by Chiofalo pertained to a claimed refusal to destroy internal NJSP documents in his possession. This claim has roots in an incident that involved other members of the State Police.

On March 20, 2012, Sergeant First Class Nadir Nassry and Trooper Joseph Ventrella participated in an unsanctioned high-speed escort of a

---

[2] Chiofalo's retirement actually became effective on July 1, 2013. Despite the closeness in time between the alleged adverse employment action and filing for retirement, Chiofalo's retirement is not in issue. He does not allege constructive discharge.

4

collection of high-end sports cars on the Garden State Parkway. Both Nassry and Ventrella were stationed in the Totowa headquarters. When the escort later became publicly known, Nassry and Ventrella, as well as others, became subjects of internal review.

As far as the record reveals, the following sequence of events occurred. A letter dated April 4, 2012, was sent to the NJSP, addressed to Colonel Fuentes, the Superintendent of the NJSP. This "letter of appreciation" from one of the escorted civilian drivers extended thanks and appreciation for Nassry and Ventrella's help with the escort (the Civilian Letter). The Civilian Letter was stamped as received in the Superintendent's office on April 13, 2012. On April 17, 2012, a Superintendent's Action Memo from Colonel Fuentes -- a preprinted buck slip -- identified the Civilian Letter by a "Doc Track" number. A box was checked on the form to note the letter was being sent to Field Operations, and the form included the following handwritten direction:

> Forwarded for information and appropriate action
> HR: For inclusion in personnel file
> C: Col. Fuentes

A box at the bottom, "For Your Further Action," was also checked off.

On April 18, 2012, Major Edward Cetnar, Deputy Branch Commander of Field Operations, sent an internal memorandum to the Troop Commander of

5

Troop C, noting that the Superintendent's Action Memo had been received and the Civilian Letter had been included in Ventrella's personnel file. Major Cetnar's memorandum also stated, under its Comments section, "[p]lease convey to [Ventrella] my appreciation for a job well done."

On April 23, 2012, Nassry and Ventrella were suspended without pay pending investigation into their participation in the escort.

On Friday, April 27, 2012, the Civilian Letter and the Cetnar Memo, which had been misdirected to Troop C, were received by Chiofalo in Troop B via interoffice mail. As the Assistant Administrative Officer responsible for receipt and tracking incoming correspondence and related directives, it was his job to act on those documents, which arrived days after the suspension of fellow troopers from Troop B. Chiofalo presented the documents to Major Catullo, then-commander of Troop B, and asked for instructions on what action should be taken. According to Chiofalo, Catullo stated that he needed to look into the matter and would follow up with further instructions. However, later that same day, Catullo was abruptly transferred from Troop B.

The following Monday, April 30, 2012, Major Robert Cuomo reported to Troop B as Catullo's replacement. Chiofalo presented Cuomo with the Civilian Letter and Cetnar Memo and asked Cuomo for instructions on what to do with the documents. Cuomo stated he would reach out to Cetnar and

6

provide further instructions. The next week, having received no further instructions, Chiofalo again went to Cuomo to discuss what he should do with the documents. In his deposition, Chiofalo stated,

> [Cuomo] said ["]It does not exist.["] That totally caught me off guard, I think I probably froze and just stood there and looked at him for a second, but it felt like 15 seconds, and I said, ["I]t does exist I have it in my hand.["] I said, ["]I'm not going to get rid of it.["] And he -- he didn't say much, but he was -- ["]do not approach me with it again.["]

According to Chiofalo, that exchange made it "pretty clear" to him that Cuomo was asking Chiofalo "to get rid of" the documents, and that in stating he was "not going to get rid" of the documents, he was refusing to participate in a criminal or fraudulent act.

2.

Chiofalo claimed that the second protected activity occurred during an interaction with Cuomo in which he accused Cuomo of not reporting his vacation time. Chiofalo alleged there were discrepancies between the reports Cuomo gave him listing where he would be the following day and what Cuomo reported to payroll. Because of those discrepancies, Chiofalo believed that Cuomo was underreporting his time off.

Chiofalo alleged that he confronted Cuomo about that underreporting in late June 2012. According to Chiofalo, Cuomo "questioned why [Chiofalo]

7

was taking two weeks off in July." In response, Chiofalo stated that "[he] earned [his] vacation time and when [he] take[s] it, they dock it out of [his] bank" and that "[he] take[s] [his] time, unlike others." According to Chiofalo, when he stated "unlike others" he was referring to Cuomo and to his suspicion that Cuomo was not properly reporting all of the time that he took off.

3.

After the filing of Chiofalo's initial complaint, the NJSP opened an internal affairs investigation, which, among other things, implicated Chiofalo for not internally reporting the behavior that Chiofalo attributed to Cuomo in his initial complaint. Chiofalo filed an amended complaint in April 2013, claiming that the investigation was retaliatory for filing his initial CEPA complaint. The amended complaint, like the initial complaint, alleged that the adverse employment actions he suffered constituted CEPA violations under N.J.S.A. 34:19-3(a) and (c). At oral argument, plaintiff conceded his case now rests on N.J.S.A. 34:19-3(c)(2) alone.

B.

Following the close of discovery, on February 23, 2016, defendants filed a motion for summary judgment, alleging that Chiofalo failed to set forth a prima facie case under CEPA. In relevant part, defendants argued that Cuomo's statements regarding the Civilian Letter and Cetnar Memo, and

8

Chiofalo's response, were too vague to constitute an order to destroy the documents and a refusal; that an order to destroy the Civilian Letter would not have been a violation of "a law, statute, or regulation that has the force of public policy" because the "commendation" was unsigned and therefore likely automatically generated by NJSP staff; and that Chiofalo had not provided evidence to show that his belief that Cuomo was underreporting his time off was reasonable. Responding to plaintiff's argument that CEPA is remedial legislation entitled to liberal construction and that the facts must be viewed from the perspective of whether plaintiff reasonably believed he was being told to destroy documents, defendants argued the following to the trial court:

> [Y]es, CEPA by law is to be determined liberally, but not unreasonably, Your Honor. What the Court -- what the plaintiff is asking here is for this Court to unreasonably believe that these innocuous statements that are not clear, that are not direct, are intended to either destroy a document that the major knows it exists because he sent it where it was supposed [to go] and that the statement, unlike others, means him, he's keeping false pay records, it doesn't meet the statute.

Immediately thereafter, the court issued an oral decision denying the motion for summary judgment. Responding directly to the argument advanced, the court stated that, taking the facts in the light most favorable to the plaintiff, "the fact is that the letter came in . . . [a]nd the direction was that it doesn't exist." The court noted that whether Chiofalo "c[ould] connect it or

9

not connect it at trial is a different question" but that, giving Chiofalo "the benefit of the doubt," it was "at least a disputed issue of fact." Accordingly, the court determined that it had "to let [the matter] go to a jury." Defendants filed a motion for reconsideration, which the court denied, noting that the arguments raised did not differ from those advanced at the initial summary judgment motion.

## C.

The matter proceeded to trial, and a jury awarded Chiofalo $305,400 in compensatory damages[3] and $150,000 in punitive damages. Defendants filed for judgment notwithstanding the verdict pursuant to Rule 4:40-2, for a new trial pursuant to Rule 4:49-1, and, in the alternative, remittitur. The trial court denied all three motions.

## D.

Defendants appealed the denial of summary judgment and the post-trial motions.[4] They raised a number of issues, including the continued claim that

---

[3] This total amount was identified in the jury verdict sheets as $5400 in past wage loss, $50,000 in future wage loss, and $250,000 in pension loss.

[4] Defendants' Notice of Appeal referred to only the November 18, 2016 order denying their post-verdict motions. However, because their accompanying case information statement identified the April 1, 2016 order denying their summary judgment motion, and both parties briefed the issue of the denial of summary judgment, the Appellate Division reviewed both orders.

plaintiff failed to satisfy several elements of a prima facie case for a CEPA claim. For the first time, however, defendants also argued, as summarized by the Appellate Division, that Chiofalo's CEPA claims were deficient "because he failed to 'identify a specific law or policy that prohibited . . . Cuomo's conduct.'" (omission in original). Plaintiff's response contended that it was "self-evident, that official police records should not be destroyed, and that an employee should not be falsifying timesheets."

In an unpublished opinion, the Appellate Division reversed the trial court judgment. The appellate court stated with respect to the validity of a CEPA claim under N.J.S.A. 34:19-3(c), "as a threshold matter, [a plaintiff] must 'first find and enunciate the specific terms of a statute or regulation, or the clear expression of public policy, which would be violated if the facts as alleged are true.'" (quoting Dzwonar v. McDevitt, 177 N.J. 451, 463 (2003) (emphasis omitted)). Therefore, when the plaintiff fails to do so a "trial court can and should enter judgment for a defendant." (quoting Dzwonar, 177 N.J. at 463).

Here, the appellate court determined that Chiofalo failed to identify at the summary judgment stage any law or regulation that he believed Cuomo violated in allegedly ordering Chiofalo to destroy documents. Nor, in the court's view, did Chiofalo provide legal support for his claim that misreporting

11

vacation time violates a clear mandate of public policy. On that basis, the appellate court concluded that defendants were entitled to summary judgment. Specific to the timekeeping claim, the Appellate Division added that Chiofalo's statement to Cuomo about the documentation of vacation time "was hardly 'whistleblowing' as contemplated by CEPA."

As a result of those deficiencies, the Appellate Division vacated the judgment in favor of Chiofalo and remanded the matter for entry of an order dismissing plaintiff's complaint with prejudice.

We granted Chiofalo's petition for certification. 236 N.J. 220 (2018). We also granted amicus curiae status to the National Employment Lawyers Association of New Jersey (NELA).

## II.

## A.

Chiofalo argues that the Appellate Division erred because it misunderstood both the factual record and the specific CEPA provision under which he was bringing his claim. He argues that the Appellate Division applied the standards for N.J.S.A. 34:19-3(a) to his claim, instead of N.J.S.A. 34:19-3(c). And, he argues, the Appellate Division erred in holding that he was required to identify a specific law or rule, when that statute requires only that the plaintiff believe the employer's action to be fraudulent or criminal.

12

Moreover, according to Chiofalo, the error was compounded by the Appellate Division's failure to appreciate that the documents Chiofalo reasonably believed he had been asked to get rid of -- to destroy -- were not just the Civilian Letter but also the Cetnar Memo. The Cetnar Memo -- a high-ranking officer's commendation of Ventrella for his work on the now-controversial escort -- could be relevant evidence in future disciplinary or any other related proceedings involving Ventrella and the NJSP. Chiofalo argues that an instruction to destroy it was plainly criminal or fraudulent behavior, as was the falsification of timesheets filed by Cuomo.

B.

NELA supports plaintiff's contention that the Appellate Division erred in its analysis. NELA specifically disagrees with the appellate court's conclusions about Chiofalo's claim under N.J.S.A. 34:19-3(c). It also argues that various statutes, as well as provisions in the administrative code, governed Cuomo's alleged request to destroy the Civilian Letter and Cetnar Memo: N.J.S.A. 47:3-15 to -32 (the New Jersey Destruction of Public Records Law), N.J.A.C. 13:92-10.4(b) (requiring the retention of government personnel records for specific time periods), and N.J.S.A. 2C:28-6(1) (criminalizing the destruction of evidence in a proceeding that the actor believes is about to be instituted). NELA acknowledges that Chiofalo did not identify any of those

13

sources of law, but argues that once a plaintiff alleges wrongdoing it is then the court's responsibility to determine whether the alleged wrongdoing is reasonably related to a source of law. In this instance, NELA contends, the trial court effectively did that.

## C.

Defendants argue that the Appellate Division correctly identified a fatal flaw in Chiofalo's claim: the failure to identify a specific law, rule, regulation or public policy that he reasonably believed defendants violated. They argue that, contrary to Chiofalo's assertion, that failure defeats claims brought under N.J.S.A. 34:19-3(c) like those brought under other sections of the statute. They further reject NELA's argument that the identification of a source of law is a responsibility of the court. Finally, defendants contend that any factual mistake by the Appellate Division regarding the documents at issue was irrelevant because the nature of the documents was not pertinent to the Appellate Division's reasoning.

## III.

An appellate court reviews a summary judgment decision by the same standard that governs the motion judge's determination. RSI Bank v. Providence Mut. Fire. Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v.

Bhagat, 217 N.J. 22, 38 (2014)). In this review of the denial of summary judgment, we focus on the arguments of the parties that concentrate on CEPA.

Chapter 105 of the Laws of 1986, otherwise known as CEPA, was enacted in the wake of this Court's opinion in Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58 (1980), to cement this State's commitment to "protect and encourage employees to report illegal or unethical workplace activities." Dzwonar, 177 N.J. at 461 (quoting Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 431 (1994)). CEPA ensures that employees are "protected from retaliation and employers are deterred from activities that are illegal or fraudulent, or otherwise contrary to a clear mandate of public policy." D'Annunzio v. Prudential Ins. Co. of Am., 192 N.J. 110, 120 (2007). CEPA is a remedial statute, and as such it "should be construed liberally to effectuate its important social goal." Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 555 (2013) (quoting Abbamont, 138 N.J. at 431).

CEPA's critical substantive provisions are contained in N.J.S.A. 34:19-3. Section 3 sets forth the statute's essential prohibition of employer retaliation for an employee's protected activities, which are identified in three subsections. Pertinent to this appeal,[5] CEPA provides as follows:

---

[5] Subsection (b) is not at issue in this matter.

An employer shall not take any retaliatory action against an employee because the employee does any of the following:

a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity . . . ; or

(2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity;

. . . .

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law, including any violation involving deception of, or misrepresentation to, any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity . . . ;

16

(2) is fraudulent or criminal, including any activity, policy or practice of deception or misrepresentation which the employee reasonably believes may defraud any shareholder, investor, client, patient, customer, employee, former employee, retiree or pensioner of the employer or any governmental entity; or

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

[N.J.S.A. 34:19-3.]

Some of the subsections' requirements have been subject to judicial elaboration. In the seminal Dzwonar case, the Court addressed a plaintiff's CEPA claims brought under N.J.S.A. 34:19-3(c)(1) and (3). 177 N.J. at 461-69. There, the plaintiff -- a former arbitration officer/representative for a union -- filed suit under CEPA alleging that she was terminated in retaliation for expressing a reasonable belief that the executive board's failure to adequately inform the general membership of its actions violated the Labor Management Reporting and Disclosure Act and the union's bylaws. Id. at 456. The jury found that the defendants had violated CEPA, but the Appellate Division set aside the verdict. Ibid. We affirmed the Appellate Division's decision, concluding, as a matter of law, that the plaintiff's asserted belief that her employer's conduct violated a law or public policy was not objectively reasonable. Ibid.

17

First, we summarized generally what a plaintiff must set forth to establish a prima facie case pursuant to N.J.S.A. 34:19-3(c). Id. at 462. We stated that a plaintiff bears the burden of demonstrating that

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c); (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> [Ibid. (citing Kolb v. Burns, 320 N.J. Super. 467, 476 (App. Div. 1999)).]

Then we expanded on how a plaintiff who pursues CEPA claims under N.J.S.A. 34:19-3(c)(1) and (3) can satisfy the first prong of a prima face case. Ibid. We stated that either "the court or the plaintiff" must identify the statute, regulation, rule, or public policy that closely relates to the complained-of conduct. Id. at 464 (emphasis added). That identification is important for other parts of the analysis, so "when no such law or policy is forthcoming," judgment can and should be entered for the defendant. Id. at 463. Satisfaction of the identification requirement enables the trial court to "make a threshold determination that there is a substantial nexus between the complained-of conduct and [the] law or public policy identified by the court or the plaintiff."

18

Id. at 464. If the required substantial nexus is not shown, the case should not proceed to a jury. See ibid.; see also Hitesman v. Bridgeway, Inc., 218 N.J. 8, 32-33 (2014) (noting the importance of the identification requirement set forth in Dzwonar for "provid[ing] a standard against which the conduct of the defendant may be measured"). In short, the identification requirement assists trial courts in "distinguish[ing] an employee's objection to, or reporting of, an employer's illegal or unethical conduct from a routine dispute in the workplace regarding the relative merits of internal policies and procedures," Hitesman, 218 N.J. at 31 (citing Dzwonar, 177 N.J. at 467-69), and thus helps in the weeding out of those cases that only "concern[] the most trivial or benign employee complaints," id. at 32 (quoting Estate of Roach v. TRW, Inc., 164 N.J. 598, 613-14 (2000)).

Importantly, Dzwonar notes that a plaintiff need not "allege facts that, if true, actually would violate that statute, rule, or public policy." 177 N.J. at 463. A plaintiff is required only to "set forth facts that would support an objectively reasonable belief that a violation has occurred." Id. at 464. The statute's salutary public policy is not furthered by any implied requirement "to make lawyers out of conscientious employees"; rather, and more accurately, its design is "to prevent retaliation against those employees who object to

19

employer conduct that they reasonably believe to be unlawful." Ibid. (quoting

Mehlman v. Mobil Oil Corp., 153 N.J. 163, 193-94 (1998)).

IV.

We begin our analysis in this matter with the principle expressed in the

Dzwonar decision, that "when a plaintiff brings an action pursuant to N.J.S.A.

34:19-3(c), the trial court must identify a statute, regulation, rule, or public

policy that closely relates to the complained-of conduct." 177 N.J. at 463.

While that general language would seem to impose some identification

expectation for CEPA claims brought under either N.J.S.A. 34:19-3(c)(1), (2),

or (3), we are unaware of any New Jersey court that has explicitly imposed this

requirement on plaintiffs proceeding under subsection (c)(2).

Only Battaglia, 214 N.J. 518, has analyzed N.J.S.A. 34:19-3(c)(2) post-

Dzwonar. That case involved a claim by a long-time employee that he was

demoted after complaining about his supervisor's alleged misuse of corporate

credit cards, which he referred to at trial as the "fraudulent use" of credit

cards. Id. at 530. However, the facts at trial revealed that the complaint which

allegedly led to the plaintiff's demotion was an anonymous letter to human

resources phrased in only general terms and containing no reference to the

supervisor's use of credit cards. Id. at 531, 536.

20

At the close of plaintiff's case, defendants moved unsuccessfully for dismissal for failure to state a prima facie case under N.J.S.A. 34:19-3(c)(2) and a verdict was ultimately entered in plaintiff's favor, which the Appellate Division affirmed. Id. at 536-37, 540-42. Our Court engaged in a careful examination of the facts after framing the issue as "whether [the] plaintiff reasonably believed that the activities surrounding the use of credit cards amounted to fraudulent activity as defined by CEPA." Id. at 557. We stated that the focus needed to be "on whether the employee making the complaint reasonably believed that the activity was occurring and that it amounted to fraud." Ibid. (citing Roach, 164 N.J. at 613).

In elaborating, we cautioned that trial courts "must be alert to the sufficiency of the factual evidence and to whether the acts complained of could support the finding that the complaining employee's belief was a reasonable one," and "must take care to ensure that the activity complained about meets this threshold." Id. at 558. Those principles "demonstrate that it is critical to identify the evidence that an aggrieved employee believes will support the CEPA recovery with care and precision." Id. at 559. As the Court explained, "[v]ague and conclusory complaints, complaints about trivial or minor matters, or generalized workplace unhappiness" are not protected under CEPA. Ibid.

In Battaglia, we did not mention any express or implied obligation to identify some legal source rendering activity fraudulent. That was not discussed in the opinion; rather, fraud was treated, under the circumstances of the case, as something that was readily apparent if factually supported. Further, we are aware of no case that requires plaintiff to precisely cite the statutory source of perceived criminal activity.

That said, the better practice in CEPA actions brought under (c)(2), or its similarly worded counterpart in (a)(2), surely is to identify the statutory or other basis for claiming objected-to behavior is criminal or fraudulent. Ordinarily, the relevant law or basis should be identified with enough specificity to allow the court to connect the facts to the reasonableness of the perception, as Dwoznar expects. We acknowledge that "criminal" or "fraudulent" activity is often apparent and commonly recognizable. That distinguishes such claims from CEPA's references in sections (c)(1) and (3) to violations of a more general "law, or a rule or regulation promulgated pursuant to law" or of "a clear mandate of public policy," which can be more obscure. But, in a CEPA action, the parties and the court need to have a common understanding of the legal principle that the CEPA plaintiff reasonably believed was being violated. That enables a true joinder of issues on the CEPA claim.

22

We reiterate, however, that we do not expect whistleblower employees to be lawyers on the spot; once engaged in the legal process, and with the assistance of counsel or careful examination by the court, however, the legal underpinnings for claimed behavior that is perceived as criminal or fraudulent should be able to be teased out sufficiently for identification purposes. Indeed, we note that NELA had no difficulty identifying statutory and regulatory provisions that pertained in this matter. That said, we acknowledge that there certainly are areas where conduct is so obviously criminal that one need not pinpoint a Title 2C provision to avoid dismissal of a CEPA claim. However, even in those areas, if a defendant questions the source of law relied on by the plaintiff, that source should be provided by the plaintiff.

The latter observation guides us in this matter. At no point during the trial or post-trial motions did defendants argue that the CEPA claim was deficient for plaintiff's failure to identify a specific law, rule, regulation or public policy that was violated by the alleged acts. More specifically, defendants never asked for a criminal code citation to support a claim under (c)(2) or some legal citation to support the claim of fraud.

The transcript of the summary judgment argument before the trial court reveals that the parties were not arguing about whether it was illegal to destroy the documents. Instead, the argument advanced by the State at the summary

23

judgment return date was whether there was an order to destroy the documents and whether there could be a reasonable belief on plaintiff's part that he had been asked to destroy or get rid of documents based on his exchange with Cuomo. It is unfair to reassess the summary judgment record based on arguments that were not advanced and that relate to a point the parties appeared to take for granted -- namely, that refusal to participate in the destruction of documents would support a CEPA claim if plaintiff reasonably believed that the destruction was ordered or occurred. The trial court's focus was on the facts presented, and on that basis we cannot say that the denial of summary judgment with respect to document destruction was in error. We therefore reverse the Appellate Division to the extent that it vacated the jury award based on plaintiff's claim that one form of his protected activity was that he opposed the destruction of internal documents.

That said, we agree with the Appellate Division that Chiofalo's alleged statement to Cuomo that "[he] take[s] [his] time, unlike others" was simply too amorphous to constitute "'whistleblowing' as contemplated by CEPA." See Battaglia, 214 N.J. at 531, 560 (concluding that a vague letter to human resources alleging there were "so many examples [of] poor and unacceptable, unethical behavior" was not sufficient to "put defendant on notice that plaintiff was trying to blow the whistle about credit card fraud" (alteration in original)).

24

Therefore, we do not disturb the Appellate Division's judgment with respect to plaintiff's claim related to his alleged protected activity of reporting fraudulent timekeeping.

V.

We reverse the judgment of the Appellate Division, which overturned the denial of summary judgment to defendants on plaintiff's CEPA claim related to the alleged refusal to destroy documents. We affirm the Appellate Division's reversal of summary judgment based on the fraudulent timekeeping allegations. We remand this matter to the Appellate Division to address defendants' remaining challenges to the trial and to the judgment awarded to plaintiff.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in this opinion.