**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1532-23

SHARON HUSSAIN,

    Plaintiff-Appellant,

v.

ALLIES, INC., JUANITA
SMULLEN, TRACEY WILSON,
ANNE KREEGER, ANITA
BOGDEN, CHRISTINE
COCUSO, and ERICA HILL,

    Defendants-Respondents.

_____

Argued February 26, 2025 – Decided April 21, 2025

Before Judges Berdote Byrne, Jacobs and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1898-22.

Peter D. Valenzano argued the cause for appellant (McOmber McOmber & Luber, PC, attorneys; Peter D. Valenzano and R. Armen McOmber, of counsel and on the briefs; and Tifffany M. Yacullo, on the briefs).

Michael R. Miller argued the cause for respondents (Margolis Edelstein, attorneys; Michael R. Miller, and Ryan P. Dickinson, of counsel and on the brief).

PER CURIAM

Plaintiff appeals from the trial court's order granting defendants' Rule 4:6-2(e) motion, dismissing her Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -14 ("CEPA") and common law wrongful termination claims with prejudice, for failure to state claims upon which relief may be granted, and denying her cross-motion for leave to file an amended complaint.

While working in defendants' group homes for developmentally disabled individuals, plaintiff voiced concerns to her supervisors regarding her belief defendants were violating N.J.A.C. 10:44A-2.8(b) and N.J.A.C. 10:44A-2.7(a), administrative regulations pertaining to staffing and medical training. At an unspecified time after relaying these concerns, plaintiff asserts her requests for paid time off ("PTO") were improperly denied, leading her to file a complaint with the New Jersey Department of Labor and Workplace Development ("DOL"). Defendants then placed plaintiff on a disciplinary "development plan," and at a meeting to discuss this plan, terminated plaintiff.

Plaintiff brought a claim in the Law Division alleging her termination was in retaliation for her grievances regarding defendants' alleged violations of

2

N.J.A.C. 10:44A-2.8(b) and N.J.A.C. 10:44A-2.7(a), and for filing a DOL complaint regarding her PTO. Plaintiff's two-count complaint asserted defendants' actions amounted to whistleblower retaliation in violation of the CEPA, and common law wrongful termination.

Defendants moved to dismiss for failure to state claims upon which relief may be granted, which the trial court granted, dismissing plaintiff's complaint with prejudice. The trial court also denied plaintiff's cross-motion for leave to file an amended complaint. We reverse, applying the permissive standard afforded to plaintiff in the pleading stage by Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739 (1989), and find plaintiff has adequately pled facts in her complaint setting forth prima facie CEPA and common law wrongful termination.

I.

The following facts are gleaned from the scant record on appeal, a product of this matter having been dismissed at the pleading stage, and are primarily reproduced in pertinent part from plaintiff's complaint, which we must accept as true for purposes of this appeal. See Sparroween, LLC v. Twp. of W. Caldwell, 452 N.J. Super. 329, 339 (App. Div. 2017) ("When reviewing a motion to

dismiss under Rule 4:6-2(e), we assume the allegations are true and afford the pleader all reasonable inferences.").

Plaintiff was hired by defendants in September 2020, as a Support Manager working in defendants' group homes for developmentally disabled individuals. Plaintiff believed defendants were in violation of N.J.A.C. 10:44A-2.8(b) because they "did not have a policy in place regarding proper ratio of staff members to individuals" living in the group homes. Plaintiff voiced these concerns to her supervisors, who responded by informing plaintiff there was no proscribed staff-to-resident ratio set forth in the regulation. Plaintiff also expressed concerns with staff being sent from one group home to another to accommodate understaffing issues. She claims her concerns were disregarded.

As a Support Manager, plaintiff was also responsible for assisting Direct Support Professionals ("DSPs") in caring for individuals living in defendants' group homes. Plaintiff alleges DSPs mentioned to her they were not trained to take a resident's blood sugar, a task DSPs were responsible for, although she does not assert which DSPs voiced these concerns to her or when. This information supported plaintiff's belief that defendants were in violation of N.J.A.C. 10:44A-2.7(a). She reported this concern to her supervisors. Plaintiff also expressed her concern regarding the way DSPs were being trained,

specifically that their training was primarily delegated to watching videos. As with her grievances about the staff-to-resident ratio, plaintiff alleges these concerns were also disregarded.

On an unspecified date after reporting her concerns to her supervisors, plaintiff was denied PTO to which she believed she was entitled. Despite being denied by the first supervisor she spoke with, plaintiff persisted and requested time off from a second supervisor because she believed the first supervisor was incorrect. However, this second supervisor also denied plaintiff's PTO request. Believing she had PTO remaining, and that this second refusal was also in error, plaintiff inquired further with an individual in the payroll department. This third inquiry was successful, as the payroll department informed plaintiff she did have PTO remaining and granted her request. Plaintiff was then granted PTO. Plaintiff thereafter filed a complaint with the DOL regarding the two initial denials of her PTO requests.[1]

At an unspecified time after filing her DOL complaint, plaintiff was placed on a disciplinary "development plan." On March 25, 2022, plaintiff had a meeting with defendants to address this plan. During the meeting, defendants

---

[1] Plaintiff has not provided the DOL complaint as part of the record on appeal. Consequently, the date plaintiff filed the DOL complaint and the DOL complaint's contents are unknown.

told plaintiff she was being disciplined for two write-ups existing on her disciplinary record. In response, plaintiff informed defendants the two write-ups had been proven false and should have been removed from her disciplinary record. In addition to the two write-ups, defendants showed plaintiff a photograph of her smoking, in violation of defendants' new non-smoking policy. When Plaintiff attempted to explain to defendants that the photograph was taken before the new non-smoking policy went into effect, defendants told plaintiff she had an "aggressive demeanor" and terminated her.

Plaintiff filed a two-count complaint on November 1, 2022, alleging whistleblower retaliation in violation of CEPA and common law wrongful discharge contrary to Pierce. Plaintiff alleges her termination was pretextual and in retaliation for filing a DOL complaint and for airing her grievances to defendants regarding their alleged violations of N.J.A.C. 10:44A-2.8(b) and N.J.A.C. 10:44A-2.7(a).

Defendants filed a motion to dismiss for failure to state claims upon which relief may be granted pursuant to Rule 4:6-2(e). Plaintiff then filed a cross-motion to amend her complaint. After oral argument, the trial court granted defendants' motion to dismiss on January 10, 2024, dismissing plaintiff's complaint with prejudice, and denying plaintiff's cross-motion to file an

6

amended complaint. The trial court reasoned plaintiff's complaint neither established that defendants' actions had a substantial nexus to the law or public policy plaintiff had identified, nor that plaintiff's termination violated a clear mandate of public policy.

## II.

We review motions to dismiss brought pursuant to Rule 4:6-2(e) de novo. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021). In considering a Rule 4:6-2(e) motion, we examine "'the legal sufficiency of the facts alleged on the face of the complaint,'" giving the plaintiff the benefit of "'every reasonable inference of fact.'" Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, 237 N.J. 91, 107 (2019) (quoting Printing Mart-Morristown, 116 N.J. at 746). "The test for a Rule 4:6-2(e) motion is 'whether a cause of action is suggested by the facts.'" Maia v. IEW Const. Grp., 257 N.J. 330, 341 (2024) - (quoting Printing Mart-Morristown, 116 N.J. at 746) (internal quotation marks omitted); see also Pace v. Hamilton Cove, 258 N.J. 82, 96 (2024) ("The plaintiff is entitled to the benefit of every reasonable inference as we 'search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.'" (alteration in original)

(quoting Printing Mart-Morristown, 116 N.J. at 746)). Admittedly, this is an "indulgent standard," see Green v. Morgan Properties, 215 N.J. 431, 456 (2013), wherein we affirm dismissals pursuant to Rule 4:6-2(e) "'in only the rarest of instances.'" Mack-Cali Realty Corp. v. State, 250 N.J. 550, 553 (2022) (quoting Printing Mart-Morristown, 116 N.J. at 772 (1989)).

Plaintiff contends on appeal the trial court erred in dismissing her complaint for failure to state claims upon which relief may be granted pursuant to Rule 4:6-2(e) because she has adequately pleaded facts to establish a prima facie CEPA and a common law wrongful termination claims, each grounded in a reasonable belief that she was terminated for raising concerns regarding defendants' alleged violations of N.J.A.C. 10:44A-2.5(b) and N.J.A.C. 10:44A-2.7(a)[2] and her filing of a DOL complaint. In response, defendants argue plaintiff's complaint does not plead facts supporting a reasonable belief they violated N.J.A.C. 10:44A-2.5(b) and N.J.A.C. 10:44A2.7(a), and defendants' initial withholding of plaintiff's PTO was not an act of retaliation but an error that was rectified without any harm to plaintiff. Defendants further contend

_____

[2] The language in N.J.A.C. 10:44A-2.5(b) and N.J.A.C. 10:44A-2.7(a) has been substantively revised since plaintiff filed her complaint. For the purposes of this appeal, our analysis of N.J.A.C. 10:44A-2.5(b) and N.J.A.C. 10:44A-2.7(a) refer to the then-current versions of these regulations.

plaintiff should not be granted leave to amend her complaint because the proposed amended complaint fails to address those errors.

A. Plaintiff's CEPA Claim.

"The Legislature enacted CEPA to 'protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct.'" Dzwonar v. McDevitt, 177 N.J. 451, 461 (2003) (quoting Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 431 (1994)). "The statute 'shields an employee who objects to, or reports, employer conduct that the employee reasonably believes to contravene the legal and ethical standards that govern the employer's activities.'" Allen v. Cape May Cty., 246 N.J. 275, 289 (2021) (quoting Hitesman v. Bridgeway, Inc., 218 N.J. 8, 27 (2014)).

In pertinent part, the statute provides:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> > a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer, or another employer, with whom there is a business relationship, that the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . .

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ;

[or]

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

[N.J.S.A. 34:19-3(a), (c).]

The statute also protects "an employee who is a licensed or certified health care professional" who performs a whistleblowing activity in response to employer conduct "reasonably believe[d] [to] constitute[] improper quality of patient care." See N.J.S.A. 34:19-3(a)(1), (b), and (c)(1). Although plaintiff cites this language in her brief as authority, it is inapplicable to her because she does not assert in her complaint that she is a "licensed or certified health care professional."

A plaintiff bringing a CEPA claim[3] must demonstrate:

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing activity" described in N.J.S.A. 34:19-3[]; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> [Dzwonar, 177 N.J. at 462.]

"CEPA is remedial legislation and therefore 'should be construed liberally to effectuate its important social goal.'" Dzwonar, 177 N.J. at 463 (quoting Abbamont, 138 N.J. at 431). Accordingly, a plaintiff bringing a CEPA claim is not required to prove their employer actually violated any law, rule, regulation, or clear mandate of public policy to be successful; the plaintiff must merely "show that he or she 'reasonably believes this to be the case.'" Id. at 462 (quoting Estate of Roach v. TRW, Inc., 164 N.J. 598, 613 (2000) (internal quotation

---

[3]  Plaintiff's complaint does not clarify whether she is bringing her claim pursuant to N.J.S.A. 34:19-3(a) or (c). However, this failure is inconsequential for purposes of this appeal as these two provisions are similar and differ only in the "whistleblowing activity" the employee took part in. Compare N.J.S.A. 34:19-3(a) with N.J.S.A. 34:19-3(c). Moreover, the issue on appeal is not whether plaintiff engaged in a proper "whistleblowing activity," but whether she held a sufficient "reasonable belief" to plead a valid CEPA claim, which is a requirement shared by both N.J.S.A. 34:19-3(a) and (c).

A-1532-23

marks omitted)); see also Mehlman v. Mobil Corp., 153 N.J. 163, 193-94 (1998) (CEPA is not intended "to make lawyers out of conscientious employees but rather to prevent retaliation against those employes who object to employer conduct that they reasonably believe to be unlawful or indisputably dangerous to the public health, safety[,] or welfare").

To be sure, plaintiff must "set forth facts that would support an objectively reasonable belief that a violation has occurred." Dzwonar, 177 N.J. at 464; see also Chiofalo v. State, 238 N.J. 527, 543 (2019) ("[T]rial courts 'must be alert to the sufficiency of the factual evidence and to whether the acts complained of could support the finding that the complaining employee's belief was a reasonable one,' and 'must take care to ensure that the activity complained about meets this threshold.'" (quoting Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 558 (2013))). This requires a trial court, considering a motion to dismiss a plaintiff's CEPA claim pursuant to Rule 4:6-2(e) to "make a threshold determination that there is a substantial nexus between the complained-of conduct and a law or public policy identified by the court or the plaintiff." Dzwonar, 177 N.J. at 464. Therefore, "the trial court must identify a statute, regulation, rule, or public policy that closely relates to the complained-of

conduct," and "should enter judgment for a defendant when no such law or policy is forthcoming." Id. at 463.

We disagree with the trial court that plaintiff has not met the threshold requirement of establishing a prima facie CEPA claim, especially in light of the liberality in which we address claims at the pleading stage and conclude the trial court read the pleading too narrowly. Plaintiff's grievances to her supervisors may amount to whistleblowing activity sufficient to satisfy the second prong of CEPA, see N.J.S.A. 34:19-3(a), (c). Plaintiff was also terminated, which amounts to an adverse employment action sufficient to satisfy prong three of CEPA, see N.J.S.A. 34:19-2(e), and plaintiff's assertion she was terminated because of her grievances to defendants sufficiently pleads a causal connection between her whistleblowing activity and alleged adverse employment action to satisfy prong four of CEPA. see Dzwonar, 177 N.J. at 462.

We conclude plaintiff's complaint has sufficiently pled that she held a reasonable belief defendants were "violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy" to satisfy prong one of CEPA based on her belief defendants had violated then-current N.J.A.C. 10:44A-2.7(a). See Dzwonar, 177 N.J. at 462. At the time of the complaint, N.J.A.C. 10:44A-2.7(a) provided:

13

Basic staff training programs shall either be offered by the Division [of Developmental Disabilities], or provided by the licensee after obtaining approval from the Division, to ensure staff competency. Within [one-hundred-twenty] days of employment, each employee shall successfully complete New Jersey Pre-Service Training that shall address, at a minimum:

1. Overview of developmental disabilities;

2. Medication training;

3. Preventing abuse and neglect;

4. American Red Cross Standard First Aid Training (and have a valid certificate on file); and

5. Cardiopulmonary resuscitation training (and have a valid certificate on file).

[N.J.A.C. 10:44A-2.7(a) (2022) (amended 2023).]

Plaintiff alleges the DSPs "were never trained properly and . . . did not know how to do things such as test an individual's blood sugar; a task DSPs are responsible for [conducting]." Training DSPs to monitor blood sugar may arguably be considered medication training pursuant to N.J.A.C. 10:44A-2.7(a)(1), because the results may require the administration of insulin, or preventing neglect pursuant to N.J.A.C. 10:44A-2.7(a)(1), because the failure to timely and correctly check blood sugar may amount to neglect. Moreover,

N.J.A.C. 10:44A-2.7(b)[4] requires defendants to provide "training in all policies and procedures not covered during orientation which are relevant to the employee's job," and plaintiff's contention the DSPs were not adequately trained in an area where testing was required of them suggests a "fundament of a cause of action" likely to be assisted by further discovery, and worthy of surviving the pleading stage. See Printing Mart-Morristown, 116 N.J. at 746.

B. Plaintiff's Common Law Claim.

Likewise, we reverse dismissal of plaintiff's complaint and remand the matter to the trial court because we conclude plaintiff has sufficiently pled a prima facie common law claim for wrongful discharge. A common law cause of action for retaliatory discharge was first recognized in the seminal Supreme Court case of Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58 (1980). Pierce provides a plaintiff with "a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." 84 N.J. at 72. "The

---

[4] Although plaintiff's complaint does not refer to N.J.A.C. 10:44A-2.7(b), we may consider this provision to determine whether she held a reasonable belief defendants were violating a law, rule, or regulation to state a claim upon which relief may be granted. See Chiofalo, 238 N.J. at 541 ("[E]ither 'the court or the plaintiff' must identify the statute, regulation, rule, or public policy that closely relates to the complained-of conduct" to establish a prima facie CEPA claim (quoting Dzwonar, 177 N.J at 464)).

sources of public policy include legislation; administrative rules, regulations or decisions; and judicial decisions." Ibid. "However, not all such sources express a clear mandate of public policy." Ibid.; see also Macdougall v. Weichert, 144 N.J. 380, 391 (1996) ("A basic requirement of the wrongful discharge cause of action is that the mandate of public policy [must] be clearly identified and firmly grounded.").

"Like the CEPA remedy to which it gave rise, [common law wrongful discharge claims] require[] . . . an expression by the employee of a disagreement with a corporate policy, directive, or decision based on a clear mandate of public policy derived from [legislation, administrative rules, or judicial decisions]." Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 109 (2008). A plaintiff must show "a sufficient expression of that disagreement to support the conclusion that the resulting discharge violates the mandate of public policy and is wrongful." Ibid.

Unless a plaintiff can sufficiently show their discharge was contrary to a clear mandate of public policy, "[a]n employer remains free to terminate an at-will employee who engages in grousing or complaining about matters falling short of [this standard] or who otherwise interferes with the ordinary operation of the workplace by expressions of personal views on matters of no real

16

substance." Ibid.; see also, Pierce, 84 N.J. at 72 ("[U]nless an employee at will identifies a specific expression of public policy, he may be discharged with or without cause."). Likewise, "[b]aseless [grievances] or expressions of purely personal views about the meaning of public policies will not meet the test for a clear mandate regardless of the manner or mode in which they are voiced." Tartaglia, 197 N.J. at 110 (internal quotation marks omitted). However, at the pleading stage, plaintiff has sufficiently set forth facts which may support her allegation that her termination was an adverse employment action taken because she filed a complaint with the DOL or expressed concern regarding violations of N.J.A.C. 10:44A-2.7(a).

Although CEPA and Pierce "ha[ve] continued to exist side by side with" one another, Tartaglia, 197 N.J. at 103, CEPA includes a waiver provision which precludes a plaintiff from bringing a common law action for wrongful discharge if the plaintiff institutes a CEPA claim challenging the discharge, see N.J.S.A. 34:19-8; see also Young v. Schering Corp., 141 N.J. 16, 27-31 (1995). However, we have interpreted this rule to apply only after the plaintiff has had the opportunity to complete discovery when she is "in a position to make a knowing and meaningful election" of remedies. Maw v. Advanced Clinical Commc'ns,

Inc., 359 N.J. Super. 420, 441 (App. Div. 2003), rev'd on other grounds, 179 N.J. 439 (2004).

Plaintiff's complaint asserts she "reported and complained about [d]efendants' unlawful behavior"—including her grievances to defendants about their alleged violations of N.J.A.C. 10:44A-2.5(b) and N.J.A.C. 10:44A-2.7(a) and her DOL complaint—and was terminated as a result. When analyzing these allegations to determine if plaintiff had sufficiently pleaded that she was discharged in violation of a "clear mandate of public policy" pursuant to Pierce, the trial court construed plaintiff's complaint too narrowly and did not adequately apply the liberal standard it must employ.

Plaintiff's complaint suggests a "fundament of a cause of action" as to her allegation of defendants' improper training may prove to be a violation of N.J.A.C. 10:44A-2.7(b). In this case, an employee's termination for reporting an employer's action they reasonably believed violated N.J.A.C. 10:44A-2.7(b) establishes a "clear mandate of public policy" because that provision dictates the necessary training for staff caring for developmentally disabled individuals, rules which are sufficiently "clearly identified and firmly grounded" as they ensure developmentally disabled individuals are cared for properly. See Macdougall, 144 N.J. at 391; N.J.A.C. 10:44A-1.1 ("The purpose of [Title 10,

18                                                                    A-1532-23

Chapter 44A of the N.J.A.C.] is to establish minimum requirements for the provision of residential services to people with developmental disabilities.").

Therefore, we reverse the trial court's dismissal of Counts I and II as plaintiff had adequately stated claims upon which relief may be granted pursuant to CEPA and the common law. We reinstate her complaint, permitting her to amend as permitted by the rules of court. We take no position as to the ultimate viability of any of plaintiff's claims.

Reversed and remanded. The complaint is reinstated. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

19                                                                      A-1532-23