815 A.2d 537 (2003)
357 N.J. Super. 418
Martin B. JUDGE, Plaintiff-Appellant/Cross-Respondent,
v.
BLACKFIN YACHT CORPORATION, BYC Acquisition Corporation and Florida Detroit Diesel Alison, Defendants,
DETROIT DIESEL CAPITAL CORPORATION, Defendant-Respondent, and
Clarks Landing Marina, Inc., Defendant-Third Party Plaintiff/Respondent/Cross-Appellant,
v.
Caterpillar Corporation and Carl Herndon, Third Party Defendants.
Superior Court of New Jersey, Appellate Division.
Argued January 6, 2003.
Decided February 13, 2003.
*538 Douglas M. Joyce, Moorestown, argued the cause for appellant/cross-respondent, Martin B. Judge (Cahill, Wilinski & Rhodes, attorneys; John R. Mininno, on the brief).
Michael G.B. David argued the cause for respondent/cross-appellant, Clarks Landing Marina, Inc. (Lewis & David, attorneys; Mr. David, of counsel and on the brief).
Citta, Holzapfel, Zabarsky & Leahey, (attorneys for respondent Detroit Diesel Capital Corporation, have not filed a brief).
*539 Before Judges BRAITHWAITE, LINTNER and PARKER.
The opinion of the court was delivered by PARKER, J.A.D.
In these consolidated appeals, plaintiff seeks to reverse the trial judge's grant of defendants'[1] motion for a new trial; and third-party defendant, Clarks Landing Marina, Inc. (Clarks Landing), seeks to reverse the judge's denial of its motion for judgment notwithstanding the verdict. We reverse the grant of a new trial and the denial of judgment notwithstanding the verdict (J.N.O.V.).
On July 28, 1997, plaintiff, Martin Judge, contracted to purchase a 1998 Blackfin 32.11 foot motor boat from defendant Clarks Landing for $292,098, plus tax and handling fee, for a total of $309,768.88. The boat was a special order and, as such, defendant required a non-refundable deposit of $30,000. A special order is a boat for which the purchaser specified personalized options to customize the vessel. Clarks Landing purchased the boat from Blackfin and then re-sold it to plaintiff. Defendant required the ten percent nonrefundable deposit to assure that plaintiff would purchase the specially outfitted vessel.
In February 1997, Blackfin filed for Chapter 11 bankruptcy.[2] Plaintiff testified that he did not know about the bankruptcy until August or September of that year, after he executed the sales contract. Upon learning of the bankruptcy, plaintiff immediately contacted Clarks Landing, "strongly" intending to cancel the contract. Clarks Landing then put plaintiff in contact with Blackfin's owner, Carl Herndon. The two discussed the litigation between Blackfin and Detroit Diesel, which led Blackfin to file for Chapter 11 bankruptcy as a defensive measure. Plaintiff also reviewed litigation papers and Blackfin's marketing plan. Satisfied with this information, plaintiff then contacted Clarks Landing and advised that he would proceed with the contract.
On October 25, 1997, plaintiff closed on the purchase of the boat and undertook a ninety minute sea trial with an electronics technician employed by Clarks Landing Marina to install certain sections of the boat and Chris Anglin, Blackfin's sales manager. Plaintiff noted only minor cosmetic flaws. The seas were rough on the day of the first trial, however, and plaintiff went on a second trial approximately one week later when there were flat seas. This time, he noted additional minor cosmetic problems and a list. The additional cosmetic problems were repaired, but plaintiff continued to complain of the list. Bobby William, Blackfin's production manager, and Anglin took the vessel for a trial but were unable to duplicate the list. They asked plaintiff to accompany them to determine whether the list was attributable to plaintiff's operation of the boat but plaintiff refused.
*540 No additional repairs were done and plaintiff placed the boat for sale with a broker, Robert Hawker, who sold it "as is" for $257,500. Hawker observed that the boat "roll[ed] to port" so he performed a slight adjustment to two screws on the synchronizer prior to the sale but made no other repairs. He testified that the boat was in "superb" condition.
On June 8, 2000, plaintiff filed his complaint, alleging breach of warranty, violations of the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 U.S.C.A. §§ 2301 to 2312, and the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to 8-116. On July 9, 1999, Clarks Landing filed a third-party complaint against Carl Herndon, president of Blackfin, and the court granted summary judgment in favor of Herndon on January 8, 2001. Defendants, Blackfin Yacht Corporation, BYC Acquisition Corporation, Caterpillar Corporation and Florida Detroit Diesel Alison, were dismissed from the case prior to trial and are not involved in this appeal.
At the close of evidence, the judge dismissed all of the claims, except consumer fraud. In direct contradiction to the judge's rulings on the issue of damages, in summation, plaintiff's counsel told the jury the purchase price of the boat without itemizing the damages. The jury awarded plaintiff damages in the amount of $110,000 and allocated it thirty-five percent against Clarks Landing and sixty-five percent against Detroit Diesel. Thereafter, the judge gave additional instructions to the jury regarding the calculation of damages, and the jury modified the award to $74,635. The judge then further modified it to $69,953.72. The award was trebled under the Consumer Fraud Act.
On August 28, 2001, Clarks Landing Marina and Detroit Diesel moved for J.N.O.V., or alternatively, a new trial. By order dated October 18, 2001, the court denied the J.N.O.V. motion, but granted a new trial on the issue of "proximate cause with respect to damages and damages only." On December 21, 2001, the court amended the October 18 order nunc pro tunc, granting defendants' motion for new trial as to all issues. It is from those orders that the parties appeal.
The issues presented in this appeal may be simply characterized as: (1) whether the evidence, together with all legitimate inferences, may sustain a judgment in favor of defendant, R. 4:40-2(b); or (2) whether the jury verdict was "a miscarriage of justice under the law" to warrant a new trial, R. 4:49-1(a).
Our scope of review for these two issues differ. The standard for J.N.O.V. is the same as for involuntary dismissal at the close of evidence under R. 4:37-2. Pressler, Current N.J. Court Rules, comment on R. 4:40-2. The "judicial function... is quite a mechanical one" for both:
[W]hether "the evidence, together with the legitimate inferences therefrom, could sustain a judgment in ... favor" of the party opposing the motion; i.e., if, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ....
[Dolson v. Anastasia, 55 N.J. 2, 5, 258 A.2d 706 (1969) (citations omitted).]
A motion for a new trial may be granted, however, although the state of the evidence would not justify a J.N.O.V. Ibid. On a motion for a new trial, the trial judge must
canvass the record ... to determine whether reasonable minds might accept *541 the evidence as adequate to support the jury verdict....
[T]ake[ing] into account, not only tangible factors relative to the proofs as shown by the record, but also appropriate matters of credibility, generally peculiarly within the jury's domain, socalled "demeanor evidence", and the intangible" feel of the case" which he [or she] has gained by presiding over the trial.
[Id. at 6, 258 A.2d 706 (quoting Kulbacki v. Sobchinsky, 38 N.J. 435, 445, 459, 185 A.2d 835 (1962)).]
In considering these issues, we must examine the evidence to determine whether plaintiff proved the elements of consumer fraud.
"Any person who suffers any ascertainable loss of moneys or property" as a result of an "unconscionable commercial practice," may bring an action for relief under the Consumer Fraud Act (Act). N.J.S.A. 56:8-19; 8-2. N.J.S.A. 56:8-2 provides that unconscionable commercial practices, including "deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact" with the intent that others rely on the concealed fact, are unlawful. Skeer v. EMK Motors, Inc., 187 N.J.Super. 465, 455 A.2d 508 (App.Div.1982). The phrase "unconscionable [commercial] practice" has been defined as a violation of "the standard of conduct contemplat[ing] ... good faith, honesty in fact and observance of fair dealing." Kugler v. Romain, 58 N.J. 522, 544, 279 A.2d 640 (1971). The term is factspecific and applied on a case-by-case basis. Id. at 543, 279 A.2d 640.
In Chattin v. Cape May Greene, Inc., 243 N.J.Super. 590, 581 A.2d 91 (App. Div.1990), aff'd, 124 N.J. 520, 591 A.2d 943 (1991), we defined two categories of prohibited acts, i.e., affirmative acts and acts of omission. Allegations of affirmative acts do not require a showing of intent; merely establishing an "unconscionable business practice" will suffice. To establish an act of omission, however, plaintiff must show that defendant (1) knowingly concealed (2) a material fact (3) with the intention that plaintiff rely upon the concealment. N.J.S.A. 56:8-2; Leon v. Rite Aid Corp., 340 N.J.Super. 462, 469, 774 A.2d 674 (App.Div.2001). To be entitled to damages under the Act, plaintiff must show a causal relationship between the unlawful fraud and his loss, regardless of whether he alleges affirmative acts or acts of omission. N.J.S.A. 56:8-19; Feinberg v. Red Bank Volvo, Inc., 331 N.J.Super. 506, 511, 752 A.2d 720 (App.Div.2000).
Here, plaintiff alleged two affirmative acts: (1) that defendant required a nonrefundable deposit; and (2) that defendant claimed the sale was a "special deal." Plaintiff argues that defendant's demand for a non-refundable deposit was intended to deceive him and force him into paying the full purchase price for the boat even though it knew that Blackfin was in liquidation.
Defendant acknowledged that the sales contract included the requirement of a non-refundable deposit because the boat was a special order, but contends that the demand for a non-refundable deposit does not constitute an act of consumer fraud. We agree. Since the boat included various expensive electronics and other custom features specifically ordered by plaintiff, the deposit was a legitimate method of financial assurance for the defendant.
Plaintiff further argues that defendant committed an "affirmative act of consumer fraud by claiming that the manufacturer of the boat was having a `special deal.' " This argument is based on a fax sent on July 25, 1997, by a Clarks Landing *542 employee to plaintiff stating: "Marty, please call me ASAP! Myself-Blackfin-my sales mgr. jumped though hoops yesterday to get you this deal. Please call me to confirm if you want to hold this boat. Best Regards George."
The record demonstrated that plaintiff, in an effort to get the best deal on the boat, took his specifications to Clarks Landing and, subsequently, to a dealer in Florida. The Florida dealer gave plaintiff a better price than defendant, and plaintiff told defendant that he would purchase the boat from Clarks Landing only if it met the Florida dealer's price. The evidence demonstrated that the fax was defendant's communication to plaintiff that defendant could meet the Florida dealer's price. We have canvassed the record and find no evidence to support plaintiff's claim that the fax constituted an affirmative act of consumer fraud.
Plaintiff also alleged two acts of omission: (1) that defendant failed to advise plaintiff that Blackfin was in bankruptcy; and (2) that defendant failed to notify plaintiff prior to delivery of the boat that Detroit Diesel Capital had acquired Blackfin's assets. To prove that these acts of omission constituted consumer fraud, plaintiff must show that the defendant intentionally concealed the information about Blackfin's bankruptcy with the intention that plaintiff would rely on the concealment, and that the information was material to the transaction. N.J.S.A. 56:8-2; Leon, supra, 340 N.J.Super. at 469, 774 A. 2d 674; Fenwick v. Kay American Jeep, Inc., 72 N.J. 372, 377, 371 A.2d 13 (1977). If plaintiff proved those two elements, he must also prove that the omission proximately caused any loss he may have suffered. Feinberg, supra, 331 N.J.Super. at 511, 752 A.2d 720.
Initially, defendant argues that, as a retailer, it had no duty to disclose the financial status of a manufacturer/supplier to a customer. Duty is a question of law. Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Group, Inc., 135 N.J. 182, 638 A.2d 1288 (1994). Whether a duty existed must be determined in light of the factual circumstances. United Jersey Bank v. Kensey, 306 N.J.Super. 540, 553-56, 704 A.2d 38 (App. Div.1997), certif. denied, 153 N.J. 402, 709 A.2d 795 (1998). Under the circumstances here, where defendant required a non-refundable deposit for the boat ordered to plaintiff's specifications, if defendant knew that Blackfin's bankruptcy would affect its ability to produce the boat, defendant clearly had a duty to disclose. Ibid.
The evidence, however, showed that Blackfin's president, Carl Herndon, notified defendant in February 1997 that he had filed a bankruptcy petition under Chapter 11 as a defensive measure to protect Blackfin in its litigation with Detroit Diesel. Herndon assured defendant that Blackfin would continue business as usual. Plaintiff presented no evidence that Blackfin did not continue to do business as usual, or that defendant had any reason to believe on July 28, 1997, when the contract was signed, that Blackfin would not deliver the boat to plaintiff's specifications. Consequently, defendant had no duty to disclose Blackfin's bankruptcy to plaintiff before the contract was signed because there was no forseeable risk that Blackfin would not deliver the boat. United Jersey Bank v. Kensey, supra, 306 N.J.Super. at 551, 704 A. 2d 38 citing Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 625 A.2d 1110 (1993).
Indeed, plaintiff's testimony supports defendant's argument that it had no duty to disclose Blackfin's Chapter 11 status. Plaintiff testified that after he learned of the bankruptcy in August or September 1997, he spoke to Herndon, reviewed *543 Blackfin's marketing plan and investigated the lawsuit between Blackfin and Detroit Diesel. He was sufficiently satisfied with the results of his investigation to proceed with the sale.
Our review of the evidence here provides no basis for the imposition of a duty on defendant to have disclosed Blackfin's Chapter 11 status to plaintiff. There being no duty to disclose, there can be no finding that defendant knowingly concealed a material fact with the intent that plaintiff rely on the concealment. Consequently, the evidence cannot sustain a judgment in favor of plaintiff.
We need not address the remaining issues raised by either party. R. 2:11-3(e)(1)(E). The orders entered on October 18, 2001, and December 21, 2001, denying defendant's motion for J.N.O.V. and ordering a new trial are vacated, and we enter judgment in favor of defendant notwithstanding the verdict. R. 4:40-2.
NOTES
[1] Defendants in the plural refers to Detroit Diesel Capital Corporation (Detroit Diesel) and third-party defendant, Clarks Landing Marina, Inc. (Clarks Landing). Detroit Diesel has neither responded to plaintiff's appeal nor joined in Clarks Landing's appeal. In this opinion, when we refer to defendant in the singular, we are referring to third-party defendant, Clarks Landing.
[2] 11 U.S.C.A. §§101 to 1330, commonly known as a Chapter 11 bankruptcy, provides protection during a period of reorganization and allows for continuation of business under the supervision of the trustee in bankruptcy, 11 U.S.C.A. § 1108. On October 10, 1997, two weeks before plaintiff closed on the sale, Detroit Diesel acquired Blackfin under the supervision of the trustee in bankruptcy.