**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2349-16T1

SERGEANT FIRST CLASS
FRANK CHIOFALO, a member
of the New Jersey State Police
(Badge No. 4772),

      Plaintiff-Respondent/
      Cross-Appellant,

v.

STATE OF NEW JERSEY,
DIVISION OF STATE POLICE
OF THE STATE OF NEW
JERSEY, and DEPARTMENT
OF LAW AND PUBLIC
SAFETY,

      Defendants-Appellants/
      Cross-Respondents,

and

ROBERT CUOMO and
JOSEPH R. FUENTES,

      Defendants.

_____

Argued April 26, 2018 – Decided June 21, 2018
Remanded by Supreme Court July 16, 2019
Reargued telephonically May 18, 2020 –
Decided August 7, 2020

Before Judges Rothstadt, Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0049-13.

Adam Robert Gibbons, Deputy Attorney General, argued the cause for appellant/cross-respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Adam Robert Gibbons, on the briefs).

George T. Doggett argued the cause for respondent/cross-appellant.

PER CURIAM

In Chiofalo v. State, 238 N.J. 527 (2019) (Chiofalo II), the New Jersey Supreme Court affirmed in part, and reversed and remanded in part, our earlier determination that the jury verdict entered in this matter in favor of former New Jersey State Trooper, plaintiff Frank Chiofalo, had to be vacated, and the earlier denial of summary judgment to defendants, State of New Jersey, Division of State Police of the State of New Jersey, Department of Law and Public Safety,[1] Robert Cuomo, and Joseph R. Fuentes, had to be reversed, because plaintiff did

---

[1] As observed by the Supreme Court, the matter improperly identified the state agency as the Division of Public Safety. Chiofalo II, 238 N.J. at 527 n.1.

A-2349-16T1

not establish a prima facie entitlement to relief under the New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. As the Court observed,

> the appellate court determined that Chiofalo failed to identify at the summary judgment stage any law or regulation that he believed [his supervisor,] Cuomo violated in allegedly ordering Chiofalo to destroy documents. Nor, in the court's view, did Chiofalo provide legal support for his claim that misreporting vacation time violate[d] a clear mandate of public policy.
>
> [Chiofalo II, 238 N.J.at 537.]

The Supreme Court affirmed our decision as to plaintiff's fraudulent timekeeping allegations but reversed our reversal of the denial of summary judgment as to plaintiff's claim relating to his refusal to destroy documents. Id. at 531, 546. The Court remanded the matter for our "consideration of defendants' unaddressed appellate issues." Id. at 531. Those issues include the same arguments defendants raised as to the entry of summary judgment about plaintiff's failure to establish a prima facie claim under CEPA, except for the issue resolved by the Court as to defendants' conduct violating a law or rule,[2]

---

[2] As the Court stated, to establish a prima facie claim, a plaintiff must demonstrate that:

but are now limited to plaintiff's proofs at trial. The other unaddressed issues

include whether:

> (1) [P]laintiff's testimony alone was insufficient to prove his economic damages; (2) the court erred in permitting plaintiff to testify as to future wage loss when he voluntarily quit his job; and (3) it was error for the trial court to instruct the jury on punitive damages because defendants' conduct was not egregious. In his cross-appeal, plaintiff argues that the trial court's award of counsel fees only accounted for the time he spent in court.
>
> [Chiofalo v. State, No. A-2349-16 (App. Div. June 21, 2018) (Chiofalo I) (slip op. at 3).]

We now address those issues.

---

> (1) [H]e or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c); (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action.
>
> [Id. at 541 (quoting Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003)).]

4

I.

A.

The facts underlying plaintiff's CEPA claims and the matter's procedural history were set forth in the Court's and our earlier opinions. See Chiofalo II, 238 N.J. at 531-37; Chiofalo I, slip op. at 4-8. We need not repeat them at length here.[3] Instead, we limit our recitation to those facts pertinent to our discussion of each of the previously unaddressed issues.[4]

Unlike our earlier opinion that addressed the issue of summary judgment, we consider the parties' contentions now in the context of the trial court's denials of defendants' post-trial motions for a judgment notwithstanding the verdict (J.N.O.V.) under Rule 4:40-2 and for remittitur or a new trial under Rule 4:49-1(a). As to the motion for J.N.O.V., defendants argued that plaintiff failed to prove each element of a CEPA claim. Specifically, defendants contended that plaintiff's supervisor, Cuomo, asking plaintiff to destroy documents did not

---

[3] According to defendants, "[t]he facts elicited at trial were nearly identical to the facts supporting [d]efendants' motion for summary judgment."

[4] We allowed for supplemental briefing on remand. In response, defendants made a submission on January 10, 2020, indicating that they would be relying on their previously filed appellate brief and only focusing on those arguments that this court previously did not consider. Plaintiff submitted a supplemental brief.

constitute a violation of CEPA, as there were various copies of the documents and the contents of the documents were public knowledge. They also argued that this was not a whistle-blowing act, plaintiff's lack of promotion was not pretextual, plaintiff's transfer to Netcong was both temporary and advantageous, his loss of designation was not retaliatory, and therefore, any actions against plaintiff were "the simple realities of working at the State Police."

On the motion for a new trial or in the alternative, remittitur, among other contentions, defendants argued that it was improper for the trial court to have barred testimony relating to why plaintiff was transferred. As to remittitur, defendants argued that the jury was not provided with evidence necessary to determine the amount of damages to which plaintiff was entitled, the jury should not have been instructed about future wage loss as plaintiff did not have an expert testify, there was no evidence as to how plaintiff was constructively discharged, and punitive damages should not have been allowed as Cuomo's actions were not "egregious." They further asserted that the award of future lost earnings should be offset to reflect amounts already received and further reduced to reflect the present-day value.

In response to defendant's Rule 4:40-2 motion, the trial court concluded that "[t]he elements of the CEPA claim founded by the jury neither fail[ed] as a

matter of law, nor [fell] contrary to the weight of the evidence." The court cited to plaintiff's reasonable belief that "Cuomo was asking to cover up documents," regardless of the number of copies that were available at the time; plaintiff's refusal to destroy the documents was "sufficient . . . to constitute a whistle[-]blowing act"; "defendant[s'] acts of transferring plaintiff, stripping [him] of his designation of [S]ergeant [M]ajor and denying him of his promotion constituted an adverse employment action"; and that there was evidence of a causal connection between plaintiff's whistle-blowing act and the adverse actions taken against him afterwards.

On the motion for a new trial or remittitur, the trial court held there was "no clear and convincing proof that the verdict constitute[d] a miscarriage of justice as reasonable minds could have reached the same verdict." The trial court found it was "clear that the jury must have taken into consideration that [plaintiff] was getting a pension and award[ed] the $10,000 a year difference that he would have gotten if he had been promoted and sta[yed] employed." The trial court did not find that the jury's award was "tainted in any way" and the "jury used their discretion in viewing the plaintiff's claim sympathetically."

The issues on appeal, "may [therefore] be simply characterized as: (1) [W]hether the evidence, together with all legitimate inferences, may sustain a

A-2349-16T1

judgment in favor of defendant[s], R. 4:40-2(b); or (2) whether the jury verdict was 'a miscarriage of justice under the law' to warrant a new trial, R. 4:49-1(a)." Judge v. Blackfin Yacht Corp., 357 N.J. Super. 418, 423-24 (App. Div. 2003).

"The standard for J.N.O.V. is the same as for involuntary dismissal at the close of evidence under [Rule] 4:37-2. The 'judicial function . . . is quite a mechanical one.'" Id. at 424 (alteration in original) (citation omitted) (quoting Dolson v. Anastasia, 55 N.J. 2, 5 (1969)). Motions brought pursuant to Rule 4:40-2 are governed by the following evidential standard:

> [I]f, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom, reasonable minds could differ, the motion must be denied . . . .
>
> [Filgueiras v. Newark Pub. Sch., 426 N.J. Super. 449, 455-56 (App. Div. 2012) (alterations in original) (quoting Verdicchio v. Ricca, 179 N.J. 1, 30 (2004)).]

In our review of the trial court's decision on such motions, we apply the same standard. Zive v. Stanley Roberts, Inc., 182 N.J. 436, 441 (2005); Filgueiras, 426 N.J. Super. at 456; Judge, 357 N.J. Super. at 424. "Neither the trial [court] nor [this] court[, as a reviewing court,] is concerned with the weight, worth, nature or extent of evidence . . . ." Polyard v. Terry, 160 N.J. Super. 497, 505-06 (App. Div. 1978), aff'd o.b., 79 N.J. 547 (1979). "A [court] is not to

A-2349-16T1

consider 'the worth, nature or extent (beyond a scintilla) of the evidence,' but only review 'its existence, viewed most favorably to the party opposing the motion.'" Lechler v. 303 Sunset Ave. Condo. Ass'n, 452 N.J. Super. 574, 582 (App. Div. 2017) (quoting Dolson, 55 N.J. at 5-6); Besler v. Bd. of Educ. of W. Windsor-Plainsboro Reg'l Sch. Dist., 201 N.J. 544, 572 (2010).

In our review, we are guided by the principle that the factfinder's determination is "entitled to very considerable respect" and "should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination." Baxter v. Fairmont Food Co., 74 N.J. 588, 597 (1977). However, despite our hesitancy to interfere with a jury's verdict, granting a motion under Rule 4:40-2 is appropriate where at trial, plaintiff fails to establish a prima facie claim to relief. As the Court stated in Brill v. Guardian Life Ins. of Am., 142 N.J. 520, 536-37 (1995),

> a dismissal under . . . Rule 4:40-2 or for failure to allege or prove a prima facie case, does not unduly intrude into the province of the jury. In those instances, there simply is no issue to be decided by a jury based on the evidence. A jury resolves factual, not legal, disputes. If a case involves no material factual disputes, the court disposes of it as a matter of law by rendering judgment in favor of the moving or non-moving party on the issue of liability or damages or both.

In considering a <u>Rule</u> 4:49-1 motion for a new trial, a different standard is applied, and the "motion . . . may be granted, . . . although the state of the evidence would not justify a J.N.O.V." <u>Judge</u>, 357 N.J. Super. at 424 (citing <u>Dolson</u>, 55 N.J. at 5). "[T]he standard for authorizing a new trial [is] one that requires a determination that the jury's verdict is 'contrary to the weight of the evidence or clearly the product of mistake, passion, prejudice or partiality.'" <u>Crawn v. Campo</u>, 136 N.J. 494, 512 (1994) (quoting <u>Lanzet v. Greenberg</u>, 126 N.J. 168, 175 (1991)).

When correcting a clear error or mistake, a trial court "may not substitute [its] judgment for that of the jury merely because [it] would have reached the opposite conclusion." <u>Dolson</u>, 55 N.J. at 6. Instead, a trial court must "canvass the record, not to balance the persuasiveness of the evidence on one side as against the other, but to determine whether reasonable minds might accept the evidence as adequate to support the jury verdict." <u>Ibid.</u> (quoting <u>Kulbacki v. Sobchinsky</u>, 38 N.J. 435, 445 (1962)).

On a motion for a new trial,

> the trial [court] takes into account, not only tangible factors relative to the proofs as shown by the record, but also appropriate matters of credibility, generally peculiarly within the jury's domain, so-called "demeanor evidence", (sic) and the intangible "feel of

the case" which he [or she] has gained by presiding over the trial.

[Ibid.]

The standard of review of such a motion is whether "it clearly and convincingly appears that there was a manifest denial [sic] of justice under the law." Id. at 7 (quoting R. 4:49-1(a)).

Remittitur or a new trial should also be awarded when the "damages award . . . is so grossly excessive that it shocks the judicial conscience." Cuevas v. Wentworth Grp., 226 N.J. 480, 499 (2016). It is also appropriate where a jury has not been properly instructed as to damages, and "the only issue is the quantum of damages, the claimant's right to relief is clear, and 'the verdict was not the result of compromise or otherwise tainted.'" Caldwell v. Haynes, 136 N.J. 422, 443 (1994) (quoting Pressler, Current N.J. Court Rules, cmt. 1 on R. 4:49-1 (1994)).

### B.

With these guidelines in mind, we turn first to defendants' remaining contentions about plaintiff's failure to establish a prima facie CEPA claim.

## Failure to Identify Statute, Rule, Regulation, or Public Policy and to Form a Reasonable Belief that Defendants' Actions Violated Any of Them

At the outset, without repeating it here, we hew to the Court's discussion in Chiofalo II about the principles governing a CEPA claim. To the extent that defendants now argue, despite the Court's opinion, that the proofs at trial relating to plaintiff being instructed to destroy the document and his belief about the illegality of the instruction were insufficient to meet CEPA's requirement in this regard, we find their argument to be without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E). Suffice it to say, as defendants concede on appeal, plaintiff's evidence at trial mirrored his proofs on summary judgment, which the Supreme Court found satisfied the first element of a CEPA claim. See Chiofalo II, 238 N.J. at 542-45. We reject defendants' further contention that, under the circumstances, it was unreasonable for plaintiff to believe that a violation of a law, as discussed in Chiofalo II, occurred as required under CEPA. See ibid.

Failure to Establish an Adverse Employment Action

Defendants argue "[a]s a matter of law, neither the loss of the designation of Sergeant Major,[5] nor [p]laintiff's reassignment to Netcong were retaliatory actions under CEPA." Defendants contend the loss of designation was immaterial as "[p]laintiff lost no rank, pay, benefits or authority." They also argue that plaintiff's reassignment, as a matter of law, is not actionable.

Additionally, according to defendants, plaintiff failed to show how the transfer "impacted his commute," or was otherwise inconvenient. Further, because plaintiff's detachment to Netcong was temporary, defendants argue that his claim was not actionable under CEPA. Defendants assert that the only reason plaintiff was never transferred back was because he prematurely retired. Moreover, plaintiff requested to be transferred, illustrating the lack of any retaliatory action taken. They also argue that plaintiff's claims are not actionable as plaintiff found his reassignment advantageous.

---

[5]  According to defendants, plaintiff was technically the Troop B Assistant Administrative Officer, which was filled by a member holding the rank of Sergeant First Class. This member was also designated the "Sergeant Major" or "first shirt" of the Troop, both being honorary designations that came with no added rank, pay, benefits, authority or the like and could be withdrawn at any time in the discretion of the head of the Division. When a Sergeant Major is reassigned from that position, the honorary designation does not follow.

A-2349-16T1

According to defendants, the trial court also improperly barred them from presenting testimony about plaintiff's transfer by sustaining plaintiff's hearsay objection. They argue that the objection prevented a witness from "testify[ing] as to his motivations for reassigning [p]laintiff to Netcong," which prevented them "from arguing a fact . . . that was crucial to an element of CEPA."

Under CEPA, a retaliatory action is defined as "the discharge, suspension or demotion of an employee, or <u>other adverse employment action</u> taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e) (emphasis added). "[A]dverse employment action" is broadly defined in light of the remedial purposes of the statute and may include such things as "making false accusations of misconduct, giving negative performance reviews, issuing an unwarranted suspension, and requiring pretextual mental-health evaluations." <u>Donelson v. DuPont Chambers Works</u>, 206 N.J. 243, 257-58 (2011). A retaliatory act need not take the form of a single discrete action but can be "many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct." <u>Green v. Jersey City Bd. of Educ.</u>, 177 N.J. 434, 448 (2003).

However, "not everything that makes an employee unhappy is an actionable adverse action." Cokus v. Bristol Myers Squibb Co., 362 N.J. Super. 366, 378 (Law Div. 2002) (quoting Montandon v. Farmland Indus., Inc., 116 F.3d 355, 359 (8th Cir. 1997)), aff'd o.b., 362 N.J. Super. 245 (App. Div. 2003). "[I]n order to be actionable, an allegedly retaliatory act must be 'sufficiently severe or pervasive to have altered plaintiff's conditions of employment in an important and material manner.'" El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 176 (App. Div. 2005) (quoting Cokus, 362 N.J. Super. at 246); see also Victor v. State, 401 N.J. Super. 596, 615 (App. Div. 2008), aff'd as modified on other grounds, 203 N.J. 383 (2010). Incidents that cause a "bruised ego or injured pride," Klein v. Univ. of Med. & Dentistry of N.J., 377 N.J. Super. 28, 46-47 (App. Div. 2005) (stating that a temporary reassignment was not actionable under CEPA because the plaintiff's reassignment did not result in a discharge, demotion, or a loss of rank, title, or compensation), or that make an employee's job "mildly unpleasant" but do not have a substantial impact on the terms and conditions of employment, Hancock v. Borough of Oaklyn, 347 N.J. Super. 350, 360 (App. Div. 2002), are insufficient to be actionable.

However, "[f]ailing to promote an employee can constitute an adverse employment action." Royster v. N.J. State Police, 439 N.J. Super. 554, 575

(App. Div. 2015) (citing <u>Jamison v. Rockaway Twp. Bd. of Educ.</u>, 242 N.J. Super. 436, 447 (App. Div. 1990)), <u>aff'd as modified on other grounds</u>, 227 N.J. 482 (2017). So too can other "[e]mployer actions that fall short of [discharge, suspension, demotion, or transfer] . . . be the equivalent of an adverse action. . . . A pattern of conduct by an employer that adversely affects an employee's terms and conditions of employment can qualify as retaliation under CEPA." <u>Beasley v. Passaic County</u>, 377 N.J. Super. 585, 609 (App. Div. 2005) (second alteration in original) (quoting <u>Cokus</u>, 362 N.J. Super. at 378).

Here, not only was plaintiff stripped of his designation as a Sergeant Major, he was also transferred to Netcong. Although either of those acts alone may not constitute retaliation, when considered together with the evidence of plaintiff not being promoted, they supported a jury finding retaliation. The jury's verdict was supported by plaintiff's testimony and a promotional worksheet admitted into evidence that indicated plaintiff was "highly recommended," but not promoted while others who were only recommended were promoted. Further, as indicated in the verdict sheet, the jury's decision also relied on Cuomo's participation in the decision making process, and that "[n]ot being promoted . . . to [L]ieutenant" constituted "retaliation by . . .

Cuomo for [plaintiff] refusing to participate in the destruction of the letter of appreciation."

Next, we consider defendants' claim that the trial court improperly barred testimony from a witness that would have demonstrated plaintiff desired to be transferred, rather than it being an adverse employment consequence. At trial the witness, Lieutenant Colonel Edward Cetnar, the Deputy Superintendent of Operations, was about to testify that other members of Troop B informed him that plaintiff wanted to be transferred to Netcong. The trial court upheld plaintiff's objection that such testimony was hearsay. We agree. Here, the witness was not prepared to testify to any conversation he had with plaintiff, but only what others said plaintiff reported to them. Under these circumstances, the trial properly excluded the evidence as hearsay because Cetnar was not testifying to what plaintiff stated to him, which would have been admissible under N.J.R.E. 803(b)(1) (addressing a party-opponent's statements), but rather what others told him plaintiff had stated. See Beasley, 377 N.J. Super. at 602-04 (finding error in admitting testimony from plaintiff that someone "told him that [other people] wanted plaintiff fired").

A-2349-16T1

**Failure to Prove a Causal Connection Between
the Whistle-Blowing Activity and the Adverse Employment Action**

Defendants also contend that plaintiff did not "present any evidence linking his alleged whistle[-]blowing act[] to his failure to be promoted and his reassignment to Netcong." They argue that plaintiff failed to establish a prima facie claim under CEPA as he was not qualified for promotion to Administrative Lieutenant in May 2012 and that the promotion in June 2012 went to a Sergeant who was more qualified. Defendants claim that "the record contains no evidence . . . suggesting that anyone promoted [was] less qualified than [plaintiff]." According to defendants, there also was no evidence that Cuomo played a role in the promotions after he left Troop B.

At the outset, we acknowledge that "the mere fact that [an] adverse employment action occurs after [the protected activity] will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two." Young v. Hobart W. Grp., 385 N.J. Super. 448, 467 (App. Div. 2005) (alterations in original) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)). Temporal proximity, on its own, will only support an inference of causation when the facts are so "unusually suggestive of retaliatory motive." Ibid. (quoting Krouse, 126 F.3d at 503). When these facts

are not present, "the plaintiff must set forth other evidence to establish the causal link." Ibid.

Here, plaintiff provided sufficient proof to illustrate a causal connection between his whistle-blowing act and being relieved as a Sergeant Major, his relocation, and his lack of promotion. This included his own testimony, the document relating to plaintiff being highly recommended for promotion, and the evidence that others were promoted. We conclude, therefore, that applying either the standard under Rule 4:40-2 or Rule 4:49-1, plaintiff produced sufficient evidence to establish a prima facie CEPA claim and there is no basis in that regard to disturb the jury's verdict.

II.

A.

Sufficiency of proof of damages

We turn to defendants' argument about plaintiff's proof of his damages. Prior to trial, defendants filed a motion in limine to bar plaintiff from testifying about damages, as plaintiff's retirement was voluntary, a promotion was speculative, and, as a lay witness, plaintiff could not testify as to "life expectancy, future loss, [and] reduction to present[-]day value." Defendants argued that the calculation of these damages was not "a simple . . .

multiplication thing." They claim that since plaintiff never worked in human resources, he was not knowledgeable enough about damages to testify on the topic. The trial court agreed that plaintiff could not testify as to present and future values because those issues required expert testimony, but he could testify to the differences in salary and pension between a Sergeant First Class and a Lieutenant. Specifically, the trial court stated,

> [i]f [defendant] can lay a foundation [on the difference in salary and pensions between a Lieutenant and Sergeant First Class], that's fine. But he [could not] give net present value, future values. It would require somebody with expertise in that field of knowledge.
>
> But he can certainly know the difference between one salary and another. And if it [was] a matter of a defined benefit . . . which is what pensions are . . . if the pension for a [L]ieutenant [was] $3,000 a month and he's getting $2,000 a month, [the court did not] think [defendant] need[ed] to be an expert to know that the difference [was] $1,000 a month every month from now until his life expectancy that the jury can consider.

During trial, plaintiff limited his proof of damages to his own testimony. Specifically, on direct examination, he testified about the differences between the salary and pension for a Sergeant First Class and a Lieutenant. During questioning by his counsel, plaintiff testified that he "believ[ed]" he was paid as a Sergeant First Class at an annual salary of $100,000. When he was asked what

a rank of a Lieutenant was, defendants' attorney objected, plaintiff's counsel withdrew the question, and then the following exchange took place:

[PLAINTIFF'S COUNSEL]: How long were you with the State Police?

PLAINTIFF: [twenty-five] and a half years.

[PLAINTIFF'S COUNSEL]: You're a [S]ergeant [M]ajor. What . . . responsibilities did you have?

PLAINTIFF: As a [S]ergeant [M]ajor?

[PLAINTIFF'S COUNSEL]: Yeah. Were you familiar with salaries in the State Police?

PLAINTIFF: Yes. Yes.

[PLAINTIFF'S COUNSEL]: Okay. Based upon your knowledge and your familiarity with salaries in the State Police, what was a [L]ieutenant being paid at that point, at the time you retired?

PLAINTIFF: I think $123,000, $124,000.

[PLAINTIFF'S COUNSEL]: Okay. Now, you get a pension; is that right?

PLAINTIFF: Correct.

[PLAINTIFF'S COUNSEL]: And is there a difference between how much a pension is for a [S]ergeant [F]irst [C]lass?

PLAINTIFF: As compared to a lieutenant?

[PLAINTIFF'S COUNSEL]: Yeah.

21

PLAINTIFF: Absolutely.

[PLAINTIFF'S COUNSEL]: And were you familiar with the pensions between a [S]ergeant [F]irst [C]lass and a [L]ieutenant?

PLAINTIFF: Somewhat, yes.

[PLAINTIFF'S COUNSEL]: All right. How much was the difference?

PLAINTIFF: Probably, if you had the same amount of time in, [twenty-five] years, 700 and change a month.

[PLAINTIFF'S COUNSEL]: 700?
PLAINTIFF: Yes.

Defendants did not present any evidence to rebut the accuracy of plaintiff's testimony. Nevertheless, during the charge conference, defendants argued that plaintiff failed to present sufficient evidence on the issue of damages in order for the jury to make a finding beyond mere speculation. Without this information, defendants requested that the trial court not instruct the jury on past and future lost earnings. The trial court denied defendants' request but stated in making the decision it was a close call. While the trial court noted the importance of providing evidence about the differences between pensions, taxes, and adjusted gross income, "the burden of proof . . . [was not] that . . . plaintiff ha[d] to prove a case to a mathematical certainty, [it] just ha[d] to be probable." The court also stated the following:

22                                                    A-2349-16T1

We [did not] have any expert testimony at all in the case so . . . plaintiff [was not] even proposing future values, net present values, compounding[], raises or anything along those lines. And since plaintiff [was not] proposing it, there[ was] nothing for the [c]ourt to do about it.

This is really closely -- more closely just a matter of arithmetic. The -- you subtract the difference between the Lieutenant's salary and the Sergeant's salary and you know the difference, but it[ was] the gross difference to – which . . . the defense . . . [was] making argument on.

The trial court held that whether plaintiff provided "sufficient information to make out a case . . . to a preponderance of the evidence," was for the jury to determine with the appropriate model jury charge. The trial court further decided not to charge the jury with present value, as no testimony was elicited about that topic.

On July 28, 2016, the jury returned a verdict in favor of plaintiff. The jury awarded plaintiff "$5400 in back pay, $50,000 in future [lost] wages, $250,000 in [future] lost pension benefits, and $150,000 in punitive damages." Chiofalo I, slip op. at 8.[6]

---

[6] In awarding the $5400 in back pay, the jury evidently relied upon the difference in the two positions' salaries. The remaining award of compensatory damages was based upon the $700 per month difference in the two positions' pension benefits.

On appeal, defendants argue that plaintiff's testimony was not sufficient to prove damages. According to defendants, plaintiff failed to provide any support for the estimations he gave for the salaries of a Sergeant First Class and a Lieutenant in the form of testimony from a person with knowledge or otherwise. They argue that economic damages should be calculated by an expert, not a lay person. Defendants also assert that on plaintiff's claim for future lost earnings, plaintiff was required to provide information about his net income. According to defendants, the trial court should not have allowed plaintiff's claim for past and future wage loss to go to the jury.

A plaintiff has "the burden of proving damages," Caldwell, 136 N.J. at 436, which cannot be "based on mere speculation." Mosley v. Femina Fashions, Inc., 356 N.J. Super. 118, 128 (App. Div. 2002) (quoting Caldwell, 136 N.J. at 442); see also Quinlan v. Curtiss-Wright Corp., 425 N.J. Super. 335, 364-65 (App. Div. 2012) (explaining that the same principles and burden of proving damages in personal injury cases is applicable for employment cases); Donofry v. Autotote Sys., Inc., 350 N.J. Super. 276, 290 (App. Div. 2001) ("It is beyond dispute that the framework for proving a CEPA claim follows that of a [Law Against Discrimination (LAD)] claim.").

"Proof of damages need not be done with exactitude . . . ." Lane v. Oil Delivery, Inc., 216 N.J. Super. 413, 420 (App. Div. 1987). "It is . . . sufficient that the plaintiff prove damages with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of the facts to make a fair and reasonable estimate." Ibid.; see also Totaro, Duffy, Cannova & Co. v. Lane, Middleton & Co., 191 N.J. 1, 14 (2007); Mosley, 356 N.J. Super. at 128-29.

Past lost earnings in a retaliation case can "be proven . . . by the difference between what the plaintiff would have earned if [his or] her employment continued as expected, and what [he or] she actually earned." Quinlan, 425 N.J. Super. at 364. However, a different standard is applicable for future lost wages. Ibid. "[A] claim for future lost wages must be supported by two things: (1) '[R]easonable probability' of such a loss flowing from the past harm; and (2) 'sufficient factual matter upon which the quantum of diminishment can reasonably be determined.'" Haywood v. Harris, 414 N.J. Super. 204, 214 (App. Div. 2010) (quoting Coll v. Sherry, 29 N.J. 166, 176 (1959)).[7]

> [A] plaintiff has not met [his or] her initial burden of proving [his or] her lost income unless [he or] she presents evidence to prove what [he or] she would have earned had [he or] she not suffered the wrong committed by defendant, how long [he or] she would

---

[7] This is often referred to as the two-pronged Coll standard. See Lesniak v. County of Bergen, 117 N.J. 12, 14 (1989).

have continued to receive those earnings, and a reasonable likelihood that [he or] she will not be able to earn that amount in the future, such as through alternative employment.

[Quinlan, 425 N.J. Super. at 364.]

While personal injury cases additionally require a plaintiff to prove his or her net income, Caldwell, 136 N.J. at 436-38; Haywood, 414 N.J. Super. at 217, that same requirement is not applied in LAD cases. See Model Jury Charge (Civil), 8.11C, "Loss of Earnings" (rev. July 2010) (explaining in a footnote to the charge that since it is unclear "whether economic damage awards . . . under the . . . [LAD] are subject to either [f]ederal and/or New Jersey State income taxation," the best course would be "not [to] require that the award be calculated on net income" (quoting Abrams v. Lightolier Inc., 50 F.3d 1204, 1221 (3d Cir. 1995))). But, a defendant is entitled to have the economic damages recovery awarded to the plaintiff "discounted to present value" in recognition of the fact that the injured party "would have had his [or her] income spread out over the remaining years of his [or her] working life." Tenore v. NU Car Carriers, Inc., 67 N.J. 466, 474 (1975); Caldwell, 136 N.J. at 440-41 (remanding for a new trial as to damages because the trial court failed to instruct the jury on, among other things, present value of future wage loss); Quinlan, 425 N.J. Super. at 352

26

(explaining that present value is one of several factors that should be considered in a retaliation case).

"Ordinarily, expert testimony would be required to establish . . . the amount of the predicted lost income." Frugis v. Bracigliano, 177 N.J. 250, 285 (2003); Cuevas, 226 N.J. at 511-12 (explaining, in an employment discrimination case, that expert testimony would be needed to receive "emotional-distress damages projected [for] the future" but not for past emotional-distress damages). While "the value of expert testimony as an aid in establishing" the two prongs of the Coll analysis cannot be denied, Lesniak, 117 N.J. at 31, there is no per se requirement for expert testimony, see Tirrell v. Navistar Int'l, Inc., 248 N.J. Super. 390, 406-407 (App. Div. 1991); Adamson v. Chiovaro, 308 N.J. Super. 70, 76-78 (App. Div. 1998) (holding an economic expert was not required in a case where the jury awarded the plaintiff damages for past and future lost earnings based on the plaintiff's testimony that her net income prior to the accident was $190,000, which decreased to $58,000 after the accident). Expert testimony is a necessity only when "the matter to be dealt with is so esoteric that jurors of common judgment and experience cannot form a valid judgment." Lesniak, 117 N.J. at 31 (quoting Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982)).

Here, plaintiff testified that the basis for his knowledge of a Lieutenant's salary and pension was that he worked for the State Police for twenty-five years. Although plaintiff's answers to questions about salaries and pensions were somewhat equivocal, he satisfied the criteria for admission under N.J.R.E. 701, permitting lay opinion testimony.[8] The claim by plaintiff was not so esoteric that expert testimony was necessary, especially since all that was required to establish his loss, without considering present value, was the difference in income and pension between two positions. Any deficiencies in his testimony were to be considered as going "to the weight of the evidence." Tarr v. Ciasulli, 181 N.J. 70, 100 n.7 (2004).

We conclude that as to the establishment of plaintiff's gross lost income, there was sufficient evidence for the jury to rely upon to support its verdict and the trial court correctly denied defendants' J.N.O.V. motion and motion for a new trial in this regard.

---

[8] The evidence rule provides: When "a witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences may be admitted if it . . . is rationally based on the witness' perception; and . . . will assist in understanding the witness' testimony or determining a fact in issue." N.J.R.E. 701.

B.

Plaintiff's testimony about future wage loss;

We reach a different conclusion as to the outcome of the two motions based upon the jury's award of future lost income. At trial, the court instructed the jury about plaintiff's claim for future lost earnings as an element of damages by following Model Jury Charge (Civil), 8:11C, specifically section (2), "Future Lost Earnings," (b) "Final Charge to be Given at Conclusion of Case If There is No Expert Testimony." It stated the following:

> In terms of future lost earnings, plaintiff also seeks to recover income and earnings that will be lost in the future. He has a right to be compensated for any income and earnings which you find will probably be lost and proximately caused by the injuries brought about by defendant's wrongdoing. If you decide from the evidence that it is reasonably probable that plaintiff will lose income in the future . . . because he either has not been able to return to work . . . or he has not been able to keep the same job or he will be able to work for a shorter period of time only, then you should include an amount to compensate for the lost income and earnings.
>
> In deciding how much . . . your verdict should be to cover future lost income and earnings, think about . . . those reasons discussed regarding past earnings' losses, including the nature, extent and duration of injury. Consider plaintiff's age today, his general state of health before, how long your -- reasonably expect to have loss of income to continue, any pension or

retirement income, and how much plaintiff can earn in any available job that he will be able to do.

The trial court did not charge section (2)(c) "Effects of Interest and Inflation on Future Earnings" as, consistent with the court's in limine decision, there was no evidence as to present value. The trial court did instruct the jury on life expectancy. Model Jury Charge (Civil), 8.11G, "Life Expectancy" (approved Feb. 1996).

Defendants contend that the jury should not have been instructed as to future damages because plaintiff voluntarily retired from the State Police and his testimony about when he should have been promoted was speculative. Relying on Donelson and Woods-Pirozzi v. Nabisco Foods, 290 N.J. Super. 252 (App. Div. 1996), defendants assert that the instruction was also not warranted because plaintiff was never constructively discharged, and Cuomo's actions were not so severe that plaintiff was unable to return to work.

Alternatively, defendants argue "any future wage[] awards must be offset by amounts received and must be reduced to present[-]day value." Specifically, they argue that the $50,000 needs to be offset by the pension payments plaintiff received after retiring, and as to future income, after considering inflation and other economic factors, the $250,000 award is in excess and must be reduced accordingly.

At the outset, we note that contrary to defendants' contentions on appeal, back and front pay can be awarded under CEPA, even in the absence of an actual or constructive discharge where plaintiff is claiming that he or she was retaliated against by not being promoted. See Grasso v. W. N.Y. Bd. of Educ., 364 N.J. Super. 109, 126-27 (App. Div. 2003) (explaining that "[f]ront pay can be awarded to 'compensate [an] employee for future lost wages'" so long as the employee can prove that he or she "would have been promoted absent the unlawful discrimination" (quoting Baker v. Nat'l State Bank, 353 N.J. Super. 145, 158 (App. Div. 2002))); but see Donelson, 206 N.J. at 257-62 (explaining, in a discharge case based on mental unfitness, that in order to recover future lost wages, the employee must also establish that he or she experienced a retaliatory action that caused the employee to suffer an injury; and the injury rendered the employee unfit for continued employment).

Here, as the Supreme Court noted, plaintiff never alleged he was constructively discharged from his employment. Chiofalo II, 238 N.J. at 532 n.2. Plaintiff's retirement from the State Police does not bar him from recovery, as CEPA does not just protect those employees who were involuntarily unemployed or constructively discharged.

Moreover, plaintiff engaged in protected activity and defendants engaged in an adverse employment action, which led to plaintiff not being promoted, being transferred to Netcong, and being stripped of his designation as Sergeant Major. Unlike Grasso, where the employee was not awarded front pay as no evidence was provided to demonstrate she "would have been promoted absent . . . unlawful discrimination," 364 N.J. Super. at 127, there was sufficient evidence present here to establish that if plaintiff did not conduct the whistle-blowing activity, he would have been promoted to Lieutenant and would not have retired.

However, we part company with the trial court with regard to its decision to not charge the jury as to present value. In Caldwell, a personal injury case, the Court vacated a jury's award and remanded for a new trial on damages or remittitur, as to pain and suffering and future lost wages because the trial court failed to charge, among other omissions, present value. 136 N.J. at 440-41. In that case, the trial court stated it failed to do so because neither party asked for the charge. Id. at 440.

Here, the trial court barred, in limine, plaintiff's testimony, if any, about present value, and during the charge conference decided not to charge the jury about it, "since plaintiff [did not] propos[e] it" and there was no evidence of

present value.  Those reasons should not have deprived defendants of their right to the charge.

We are not persuaded by plaintiff's argument that because his damages were based upon the difference in pension payments between a Lieutenant and a Sergeant First Class, there was no need for the jury to consider present value. Defendants were entitled to have the jury determine the appropriate "[d]iscounting [to get] the present value or present worth in a single amount of money which otherwise would be received over a number of years at so much per year." Model Jury Charge (Civil), 8:11C.

Under these circumstances we are constrained to remand the matter for a new trial as to damages.  Caldwell, 136 N.J. at 443.  "On remand we encourage the trial court to [re]consider a motion for remittitur under Rule 4:49-1."  Ibid.

## III.

### Punitive damages

Defendants last argue that punitive damages against a public entity can only be granted after a rigorous standard of liability is shown.  Citing to the New Jersey Punitive Damages Act (NJPDA), N.J.S.A. 2A:15-5.12, they contend that punitive damages "should be awarded only when the plaintiff proves by clear and convincing evidence that the acts or omissions of defendants 'were actuated

by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed.'"  Defendants assert that "[n]o reasonable jury could have found that" Cuomo's actions were "especially egregious." Defendants state that practically, "all promotion[s] and reassignment[s] . . . are conducted by 'upper management.'"  Thus, defendants argue that there is no way the legislature contemplated the "actual participation by upper management" to apply to State Police, "as [that] would require punitive damages to be assessed in every CEPA case."

CEPA "is a civil rights statute.  Its purpose is to protect and encourage employees to report." Green, 177 N.J. at 443 (quoting Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 431 (1994), superseded by statute on other grounds, N.J.S.A. 34:19-5).  Despite that purpose, punitive damages are available only in "exceptional cases." Victor, 401 N.J. Super. at 618 (quoting Catalane v. Gilian Instrument Corp., 271 N.J. Super. 476, 500-01 (App. Div. 1994)).  There are two essential prerequisites to an award of punitive damages: (1) Proof that there was "actual participation in or willful indifference to the wrongful conduct on the part of upper management," and (2) proof that the conduct was "especially egregious." Rendine v. Pantzer, 141 N.J. 292, 314 (1995) (quoting Leimgruber v. Claridge Assocs., Ltd., 73 N.J. 450, 454 (1977));

accord Quinlan v. Curtiss-Wright Corp., 204 N.J. 239, 274 (2010); Cavuoti v. N.J. Transit Corp., 161 N.J. 107, 113 (1999).

The test for egregiousness is satisfied if plaintiff has proven "an intentional wrongdoing in the sense of an 'evil-minded act' or an act accompanied by a wanton and willful disregard for the rights of [plaintiff]." Quinlan, 204 N.J. at 274 (alteration in original) (quoting Rendine, 141 N.J. at 314); Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 49 (1984). Alternatively, a plaintiff can prove conduct is especially egregious if "actual malice" is proven. Quinlan, 204 N.J. at 274 (quoting Herman v. Sunshine Chem. Specialties, Inc., 133 N.J. 329, 337 (1993)); see also Berg v. Reaction Motors Div., Thiokol Chem. Corp., 37 N.J. 396, 414 (1962) ("Our cases indicate that the requirement [of willfulness or wantonness] may be satisfied upon a showing that there has been a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to consequences."). Factors to consider in this determination are "the likelihood that the conduct would cause serious harm, the [employer's] awareness or . . . disregard of the likelihood of such harm, the [employer's] behavior after he or she learn[s] that the conduct [could] . . . cause harm, [and] the duration of the [harmful] conduct." Quinlan, 204 N.J. at 274.

In general, "[b]ecause punitive damages are not intended to compensate the plaintiff for his or her injuries, they do not 'logically depend on the extent of the injury sustained by an individual plaintiff,'" but instead "'should be sufficient to serve the purpose of deterring future misconduct' by the defendant." Kluczyk v. Tropicana Prods., Inc., 368 N.J. Super. 479, 497 (App. Div. 2004) (quoting Smith v. Whitaker, 160 N.J. 221, 242 (1999)). "On the other hand, . . . 'the award must bear some reasonable relation to the injury inflicted and the cause of the injury.'" Ibid. (quoting Whitaker, 160 N.J. at 243).

In Green, the Supreme Court upheld a $300,000 award of punitive damages under a CEPA claim as the plaintiff was no longer allowed to participate in certain programs at work; she "was told that she was on [her boss's] 'shit list'"; she received "substandard evaluations" only after her whistle-blowing activity took place; was not given necessary supplies; certain teacher privileges were taken away; and her students were "treated unfairly." 177 N.J. at 439-40, 448. That plaintiff eventually resigned from her position and was diagnosed with major depressive disorder, which her psychiatrist found to be causally connected to her work situation and "persistent severe headaches and other physical symptoms." Id. at 440.

Here, granting all reasonable inferences to plaintiff, Verdicchio, 179 N.J. at 30, we conclude that a reasonable jury could find, by clear and convincing evidence, that Cuomo's conduct was especially egregious. After plaintiff confronted Cuomo regarding the letter of commendation and told him that he would not "get rid of it," plaintiff was denied a promotion and transferred to another location. Being transferred, losing his designation, and not being promoted supported the jury's finding that defendants' conduct was egregious. It cannot be said that the jury's award of punitive damages was "contrary to the weight of the evidence or clearly the product of mistake, passion, prejudice or partiality." Crawn, 136 N.J. at 512 (quoting Lanzet, 126 N.J. at 175).

However, having affirmed plaintiff's entitlement to a punitive damage award, we are still constrained to vacate the award and remand it for a new trial or remittitur because, whereas here, "the punitive damages are intimately related to those compensatory damages, the punitive damages must also be redetermined." Picogna v. Bd. of Educ. of Cherry Hill, 143 N.J. 391, 404 (1996) ("The Court has consistently held that there is some linkage between compensatory and punitive damages.").

A-2349-16T1

IV.

Counsel fees

In his cross-appeal, for the first time, plaintiff challenges the trial court's award of counsel fees. He argues that the trial court failed to take into consideration time expended by his attorney in activities that were other than time spent in court for trial. Plaintiff also argues that the trial court failed to consider the requirements for awarding fees under Rendine, 141 N.J. at 337-38.

We initially observe that plaintiff did not brief this issue in his original merits brief and only did so in his supplemental brief on remand. Moreover, plaintiff has not included in his appendix copies of any submission he made to the trial court as required by Rule 4:42-9 in support of his fee application. Under these circumstances, we will not consider plaintiff's contentions about the fee award because "[a]n issue not briefed on appeal is deemed waived," Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011), and "[w]ithout the necessary documents, we have no basis for determining" the issue raised in the cross-appeal, Soc'y Hill Condo. Ass'n. v. Soc'y Hill Assocs., 347 N.J. Super. 163, 177 (App. Div. 2002); R. 2:6-1 (addressing contents of appendix); R. 2:6-2(a)(6) (requiring legal arguments to be set forth in appellate brief and identified by separate point headings); R. 2:6-2(d) (requiring respondent/cross-appellant's

brief to "address[] the cross appeal"). Briefing an issue for the first time in a supplemental brief after a remand is no different than doing so in a reply brief. See Drinker Biddle & Reath LLP. v. N.J. Dep't of Law & Pub. Safety, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (explaining that claims not addressed in an appellant's merits brief are deemed abandoned).

Even if we were to consider the cross-appeal, from the transcripts filed, it is clear that plaintiff failed to provide the trial court with a certification of services as required by Rule 4:42-9(b), or any time records to afford the trial court with an opportunity to perform its function under the parameters set forth in Rendine. As the trial court stated, "[w]ithout a time sheet [it did not] know how much time was spent." Moreover, even though the trial court was not properly informed, it still made an award of $23,748.60 based upon the generous assumption that, during trial, the attorneys were physically in court eight hours a day.

## V.

In sum, the trial court's judgment as to liability and damages relating to past lost income is affirmed. We vacate the judgment as to damages for lost future income as well as the amount of punitive damages and remand those issues for a new trial or remittitur.

A-2349-16T1

Affirmed in part; vacated and remanded in part for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION